UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS. CASE NO: 2:17-cr-136-FtM-UAMRM

ROMEO VALENTIN SANCHEZ

## **ORDER**[1]

Before the Court is Defendant Romeo Valentin Sanchez's Motion to Suppress (Doc. 33) and the Government's Response in Opposition (Doc. 44). The Court held an evidentiary hearing on Sanchez's motion at which Sanchez was present and represented by counsel.

The Government called two witnesses at the hearing, Detective Jason Hicks and Sergeant Paul Kaye, both members of the Cape Coral Police Department's Major Crimes Unit. The Government introduced Sanchez's prior military conviction, a text message exchange between Sanchez and a victim's sister, a controlled call between Sanchez and a minor victim, two search warrants and supporting affidavits for Sanchez's cell phones, pictures of Sanchez's home, an interview recording taken of Sanchez speaking with law enforcement, and body cam footage of Sanchez's arrest. Sanchez did not present evidence or call witnesses.

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

Sanchez seeks to suppress his Galaxy Note 4 ("Phone 1"), his Galaxy S5 ("Phone 2"), his statements to Cape Coral Police Officers on April 13, 2017, and a victim's statements whose identity was obtained after the search of Phone 2. For the following reasons, Sanchez's motion is denied.

**BACKGROUND**

Detective Hicks began investigating Sanchez after an individual contacted the Cape Coral Police Department about Sanchez having sex with her Minor[2] sister. As part of that investigation, a child protective team interviewed the Minor, who detailed her relationship with Sanchez. Sanchez and the Minor knew each other because Sanchez used to date the Minor's adult sister. Sanchez and the Minor became close and exchanged sexually charged messages through text, Snapchat, and Kik Messenger. The two eventually began a sexual relationship. According to the Minor, they had sex in the Minor's house and in Sanchez's green Mustang.

During his investigation, Detective Hicks interviewed the Minor's neighbor who saw the Minor sneak out and get into a green Mustang. He also reviewed the Minor's cell phone and found saved Snapchat conversations and photos between the Minor and Sanchez. However, Detective Hicks could not recover messages from Kik Messenger. Detective Hicks also learned Sanchez was found guilty of sending a lewd picture to a minor child over the internet in a court martial proceeding.

Armed with this knowledge from his investigation, Detective Hicks had the Minor make a controlled phone call to Sanchez. The Minor told Sanchez that her parents knew about their relationship and would contact law enforcement. Sanchez denied any

---

[2] For this Order, the Court will refer to the underaged individual as the Minor.

involvement with the Minor. After the call, Detective Hicks believed that Sanchez knew of the investigation. He obtained a search warrant to seize Phone 1.

On April 13, 2017, Detective Hicks, Detective Mino, Sergeant Kaye, and Officer Mills traveled to a residence where Sanchez lived with his parents. Detective Hicks planned to speak with Sanchez before executing the search warrant. On arrival, Detective Hicks and Detective Mino approached the house while Sergeant Kaye and Officer Mills remained on the street. An adult female was in the front yard when the Detectives approached. They asked her if they could speak with Sanchez.

The adult female went into the home to get Sanchez. Sanchez came outside to speak with the Detectives in the driveway. Detective Hicks recorded the conversation with a concealed recording device. But the recording device only captured part of the conversation. The Detectives spoke with Sanchez about their investigation. Sanchez said that he lived at the address with his parents. He admitted to dating the Minor's sister, but he knew the sister by a different name than the one Detectives told him. He met the Minor when he visited her house with his parents, but he denied going to the Minor's house without his parents. He also denied meeting her in another location or her being in his Mustang. And he denied having sex with the Minor. Sanchez admitted to talking with the Minor on the telephone only once when she asked him to order her a prom dress. He denied speaking to the Minor during the controlled call. Sanchez said that "everyone" had access to his phone, and that he did not lock the device. The Detectives told Sanchez they believed he was lying to them based upon their investigation.

During the questioning, Sanchez asked Detective Hicks if he was being arrested — which Detective Hicks denied. Sanchez then asked Detective Hicks if he needed to get a lawyer. Detective Hicks told Sanchez he could not give him legal advice.

After speaking with Sanchez, the Detectives presented him with the search warrant for Phone 1. Sanchez reviewed the warrant, expressed concern about the electronic signature, and asked for a lawyer to look over the search warrant. The Detectives maintained the search warrant was valid and they were there to seize the phone. They asked Sanchez for its location. He indicated, "I'm fine giving you my phone . . ." but he just wanted to make sure the warrant was valid. Detective Hicks told Sanchez he would be arrested if he did not turn over his phone.

During the conversation regarding the phone, Sanchez grabbed at his pocket. Detective Hicks patted the outside of Sanchez's pocket to make sure that he had no weapon and to prevent Sanchez from wiping Phone 1 if it was in the pocket. Detective Hicks testified that he was concerned that Sanchez, or others in the residence, could wipe Phone 1 remotely or through a couple key strokes, and there was no way to prevent remote wiping without physical possession of the device.

At some time during the conversation, Sanchez's parents returned home. Sergeant Kaye approached them and told them Sanchez was being questioned as part of an investigation. Although Sanchez's parents did not initially join the conversation between the Detectives and Sanchez, they later approached the area where the conversation was taking place. At the time they approached the conversation, the Detectives were speaking to Sanchez about the warrant they had to seize the phone. Sergeant Kaye proposed that Sanchez's parents get the phone. When Sanchez was asked if they knew where his phone was, he replied, "yeah they do." When asked where the phone was, Sanchez said, "in my room."

Sergeant Kaye testified that Sanchez's mother agreed to get the phone from the residence. He did not recall whether she verbally or nonverbally agreed but testified he would not have entered the residence without her permission. Sergeant Kaye then

4

followed Sanchez's mother into the home. He testified he did so for safety purposes and to ensure that the phone was not tampered with. Sanchez's mother led him to an unlocked bedroom where Phone 1 was located. Sergeant Kaye could not recall who picked up the phone. The two were in the home for just a few minutes. After retrieving Phone 1, the officers left without arresting Sanchez.

A few months later, Detective Hicks and Officer Eric Stevens arrested Sanchez at his workplace, Carrabba's Italian Grill. Officer Stevens wore a body camera during the arrest. Detective Hicks and Officer Stevens entered the restaurant and recognized Sanchez. He retreated to a back room before they followed and arrested him. Detective Hicks and Officer Stevens then seized Phone 2 from the office area of the restaurant.

Detective Hicks found evidence of two additional victims after reviewing the contents of Phone 2. He also found evidence that Sanchez solicited and received child pornography through Kik Messenger and other types of social media. Detective Hicks contacted one of the victims from Phone 2 who corroborated that Sanchez requested and received child pornography from her.

Thereafter, a grand jury indicted Sanchez for production of child pornography, possession of child pornography, and lewd or lascivious battery or molestation. (Doc. 1). Sanchez now moves to suppress the contents of Phones 1 and 2, his statements made on April 13, 2017, and the victim's statements obtained as a result of seizing Phone 2.

## DISCUSSION

### A. Phone 1

Sanchez argues that Sergeant Kaye's warrantless entry into his home violated the Fourth Amendment. The Government presents three arguments in response. First, Sergeant Kaye had consent from Sanchez's mother to enter the home to seize Phone 1. Second, exigent circumstances existed because Phone 1 and its contents were in danger

of being destroyed. And third, even if a Fourth Amendment violation occurred, suppression is not warranted under the exclusionary rule. After review, the Court need not proceed past the Government's first argument.[3]

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause." U.S. Const. Amend. IV. "With few exceptions, the question whether a warrantless search of a home is reasonable and hence constitutional must be answered no." *Kyllo v. United States*, 533 U.S. 27, 31 (2001). One exception is if the search occurs after a valid consent. *See United States v. Watkins*, 760 F.3d 1271, 1279 (11th Cir. 2014). To establish consent, "[t]he government bears the burden of proving both the existence of consent and that the consent was not a function of acquiescence to a claim of lawful authority but rather was given freely and voluntarily." *United States v. Yeary*, 740 F.3d 569, 581 (11th Cir. 2014) (citation omitted).

Voluntary consent is evaluated on a totality of the circumstances approach. *United States v. Morales*, 893 F.3d 1360, 1367 (11th Cir. 2018). Courts consider factors such as the "voluntariness of the defendant's custodial status, the presence of coercive police procedure, the extent and level of the defendant's cooperation with police, the defendant's awareness of his right to refuse to consent to the search, the defendant's education and

---

[3] Although the Court need not reach the exigent circumstances argument, it notes that a reasonable, experienced officer had legitimate reason to fear evidence on Phone 1 would be destroyed by wiping, remote or otherwise, before securing a search warrant for Sanchez's home. Such fear is because Sanchez (1) was not in custody, (2) told the Detectives that his phone was not locked and everyone had access to it, (3) knew about the Detectives investigating his sexual relationship with the Minor; (4) knew the Detectives had a warrant for Phone 1, and (5) had been previously convicted of a crime for inappropriate contact with a minor.

6

intelligence, and, significantly, the defendant's belief that no incriminating evidence will be found." *Id.* (internal quotations omitted).

These factors are also helpful to determine whether a co-occupant voluntarily consented. *See Id.* Co-occupants of a shared dwelling may give valid consent if that person has "joint access or control" over the area. *Id.* at 1369 (citation omitted). A consent to search is valid if the police reasonably believe that the co-occupant possessed authority over the premises. *United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008).

There is no dispute here that there was a valid search warrant for Phone 1 and that Sanchez and his parents were co-occupants of the residence where the phone was located. When his parents arrived at the residence, Sanchez was standing outside speaking with Detectives Hicks and Mino. Although Sanchez's parents were told they could leave, they did not.

At one point, Sanchez's parents approached the garage area where the Detectives were meeting with their son. At that time, the Detectives were speaking to Sanchez about Phone 1. Sergeant Kaye suggested that Sanchez's parents get the phone. Sanchez said that the phone was in his room. Sergeant Kaye testified that Sanchez's mother affirmatively agreed to get the phone. His testimony, while lacking in the specifics of how Sanchez's mother consented, was uncontroverted and credible. He never wavered in his testimony that she consented to the search and that he would not have entered the residence without first obtaining consent. He followed Sanchez's mother inside and into an unlocked bedroom. Once the phone was retrieved from the bedroom, Sergeant Kaye and Sanchez's mother exited the residence. The entire search took minutes.

There is no evidence of intimidation or coercion; Sanchez's mother was not under arrest or threatened. A reasonable officer standing in Sergeant Kaye's shoes would have

7

believed that Sanchez's mother could enter her residence and retrieve the phone. When Sergeant Kaye asked Sanchez's mother to retrieve the phone, she never stated that she did not have access to the home, the unlocked bedroom, or the phone. Nor did Sanchez or his father indicate that she did not have permission to retrieve Phone 1. In fact, Sanchez told them where it was.

The search was limited in scope. Sergeant Kaye followed Sanchez's mother into the home to obtain the phone and did not deviate from that consent. The only item retrieved was Phone 1. Based on a review of the totality of the circumstances, the Court finds that Sanchez's mother gave Sergeant Kaye voluntary consent.

Moreover, Sanchez's argument he objected to the search for Phone 1 is unavailing. It is true that "a physically present co-occupant's stated refusal to permit entry prevails, rendering the warrantless search unreasonable and invalid as to him." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). But the Eleventh Circuit has interpreted this exception narrowly. *See Watkins*, 760 F.3d at 1281. And the narrow exception does not fit the facts of this case. Sanchez was present at the time, but he did not object to Sergeant Kaye entering the home. At most, he requested a lawyer to review the search warrant for Phone 1 due to the electronic signature. That is not an "express refusal of consent." *Randolph*, 547 U.S. at 120. Thus, the Court finds a valid consent existed, and the motion to suppress Phone 1 is denied on those grounds.

## B. Phone 2

Sanchez next argues that the search warrant for Phone 2 was tainted because it was based, in part, on the evidence found in Phone 1. Thus, the evidence obtained from Phone 2, including the identity of a second victim and her later statements, is fruit of the poisonous tree and must be suppressed. Because the Court found that Sergeant Kaye's seizure of Phone 1 was valid and that was the information used to secure a second search

warrant, Sanchez's argument fails. Thus, the Court will not suppress Phone 2 or its contents. Nor will it suppress the additional victim statements obtained because of that search.

## C. Sanchez's Statements

Finally, Sanchez argues that his April 13, 2017 statements must be suppressed because of a *Miranda* violation and/or *Edwards* violation. In *Miranda v. Arizona*, the Supreme Court established protection, in the form of warnings, against the pressures of custodial interrogation. [384 U.S. 436, 444 (1966)](). In *Edwards v. Arizona*, the Supreme Court expanded on *Miranda* and held that questioning must stop once a defendant invokes his right to counsel in a custodial interrogation. [451 U.S. 477, 484 (1981)](). *Miranda* and *Edwards* protections apply in custodial interrogations. *See [Montejo v. Louisiana, 556 U.S. 778, 795 (2009)]()* (noting that the *Miranda-Edwards* regime only applies in the context of custodial interrogations); [*Stansbury v. California*, 511 U.S. 318, 322 (1994)]() ("An officer's obligation to administer *Miranda* warnings attaches, however, only where there has been such a restriction on a person's freedom as to render him in custody."); [*United States v. Street*, 472 F.3d 1298, 1309 (11th Cir. 2006)]() ("[P]re-custodial questioning does not require *Miranda* warnings."); [*Tukes v. Dugger*, 911 F.2d 508, 515 (11th Cir. 1990)]() (holding that because defendant was not in custody, he could not obtain relief under *Edwards*). Thus, the threshold inquiry is whether Sanchez was in custody.

A defendant is in custody if there is a "formal arrest or restraint of movement of the degree associated with a formal arrest." [*United States v. Brown*, 441 F.3d 1330, 1347 (11th Cir. 2006)]() (internal quotations omitted). To determine whether a person is in custody, courts apply an objective test based on the totality of the circumstances from the viewpoint of a reasonable innocent person. *See Id.* Courts have considered many factors: whether law enforcement tells a suspect they are under arrest; the duration of the

9

questioning; whether the suspect was physically restrained; where the interrogation occurs; whether law enforcement touched the suspect; and an officer's tone of voice. *See Brown*, 441 F.3d at 1347-1349; *Street*, 472 F.3d at 1309; *United States v. Matcovich*, 522 F. App'x 850, 851 (11th Cir. 2013).

A complete review of law enforcement's questioning of Sanchez shows he was not in custody. The Detectives questioned Sanchez in the driveway of his home after he voluntarily exited the residence to speak with them. Sanchez was not physically restrained, and law enforcement never drew their weapons. Detective Hicks informed Sanchez he was not under arrest. Significantly, Sanchez was not even arrested after the questioning ended. These factors weigh heavily in favor of a non-custodial interrogation. Although Detective Hicks patted Sanchez's pockets during the interview, accused Sanchez of lying, and threatened to arrest Sanchez if he did not give up Phone 1, these factors do not outweigh the evidence that Sanchez was not subjected to a custodial interrogation. Based on the evidence, Sanchez was not in custody. Therefore, no *Miranda* or *Edwards* protections apply. Sanchez's motion is denied on those grounds.

Accordingly, it is now

**ORDERED:**

Defendant Romeo Valentin Sanchez's Motion to Suppress (Doc. 33) is **DENIED.**

**DONE AND ORDERED** at Fort Myers, Florida, this 1st day of November 2018.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record