UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

VS.                                                          CASE NO: 2:17-cr-136-FtM-38MRM

ROMEO VALENTIN SANCHEZ

## **OPINION AND ORDER**[1]

Before the Court is Defendant Romeo Valentin Sanchez's Renewed Motion to Exclude Proposed Extrinsic Evidence (Doc. 83), Motion for Severance (Doc. 84), Motion in Limine (Doc. 106), the United States' responses in opposition (Doc. 90; Doc. 95; Doc. 112), and Sanchez's replies (Doc. 110; Doc. 111).

## Background

The United States charged Sanchez with seven counts relating to possession and production of child pornography involving two minor victims, C.R.P. and A.E.P.:

- Count 1: Enticing C.R.P. to engage in criminal sexual activity (production of child pornography, lewd or lascivious sexual battery and molestation, and sexual performance by a child) from April 1, 2016 – April 30, 2017, in violation of 18 U.S.C. § 2422(b)
- Count 2: Enticing C.R.P. to produce child pornography from April 1, 2016 – April 30, 2017, in violation of 18 U.S.C. § 2251(a) and (e)
- Count 3: Possessing a cell phone containing child pornography from April 25, 2016 – April 30, 2017, in violation of 18 U.S.C. § 2252 (a)(4)(B) and (b)(2)
- Count 4: Enticing A.E.P. to engage in criminal sexual activity (production of child pornography, lewd and lascivious battery, and sexual performance by a child) from May 26, 2017 – June 10, 2017, in violation of 18 U.S.C. § 2422(b)
- Count 5: Enticing A.E.P. to produce child pornography from May 26, 2017 – June 10, 2017, in violation of 18 U.S.C. § 2251(a) and (e)

---

[1] Disclaimer: Documents filed in CM/ECF may contain hyperlinks to other documents or websites. These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

- Count 6: Possessing a cell phone containing child pornography from May 22, 2017 – June 22, 2017, in violation of 18 U.S.C. § 2252(a)(4)(B) and (b)(2)
- Count 7: Committing a felony involving a minor (Counts 1, 2, 4 & 5) when he was required to register as a sex offender from April 1, 2016 – June 10, 2017, in violation of 18 U.S.C. § 2260A

(Doc. 71).

Detective Jason Hicks of the Cape Coral Police Department began investigating Sanchez after his ex-girlfriend ("C.V.") reported that Sanchez had sex with her 13-year-old sister, C.R.P. After interviewing C.R.P. and other witnesses, analyzing C.R.P.'s phone, and reviewing phone and social-media records, the CCPD had C.R.P. make a controlled phone call to Sanchez. Sanchez's statements and demeanor during the call led Detective Hicks to believe Sanchez knew about the investigation. Detective Hicks got a warrant to seize Sanchez's phone, which he executed the next day. According to the United States, a search of Sanchez's phone revealed that Sanchez used the Kik messenger app to repeatedly solicit pornographic images and videos from C.R.P. When the CCPD arrested Sanchez, they discovered a second cell phone, which he allegedly used to convince 14-year-old A.E.P. to send him pornographic images and videos.

In the motions before the Court, Sanchez seeks to exclude certain evidence and to sever Count 7.

### Discussion

**A. Renewed Motion to Exclude Proposed Extrinsic Evidence**

Before being investigated by the CCPD, Sanchez faced three charges in an Air Force court martial. The United States wants to introduce the two specifications for which Sanchez was found guilty:

CHARGE I: Article 92. Plea: NG. Finding: G…

> Specification 2: Having knowledge of a lawful order issued by Captain Nicholas J. Petren, to not engage in any physical or social contact with non-family members under the age of 18, an order which it was his duty to obey, did, at or near Hanscom Air Force Base, Massachusetts, on or about 11 June 2010, fail to obey the same by wrongfully engaging in social contact with JR, a non-family member under the age of 18, by yelling to JR as she walked near him 'you guys following me,' and then stating 'just kidding, what are you guys up to?,' or words to that effect…
>
> CHARGE II: Article 120. Plea: NG. Finding: G.
>
> Specification: Did, within the continental United States, between on or about 1 February 2010 and on or about 31 March 2010, wrongfully commit indecent conduct, to wit: sending a picture of himself holding his exposed penis and a picture of a woman with her breasts and buttocks exposed to GS, then a child under 16 years of age, over the internet.

(Doc. 95-1).

During its investigation, the CCPD also discovered evidence that Sanchez solicited and received nude images from a third victim, S.V., over Facebook and the Kik app. According to a police interview of S.V., Sanchez first contacted her on Facebook when she was 14 or 15. (Doc. 95-2). He repeatedly asked her to send him pictures, telling her he would delete them but ultimately refusing to do so. S.V. told Sanchez her age, but he was undeterred. They did not meet in person until S.V. was an adult, when Sanchez came to her house to paint her mom's nails. The United States intends to introduce evidence of Sanchez's interactions with S.V.

The 11th Circuit applies a 3-part test for determining the admissibility of extrinsic evidence under Rule 404(b): (1) the evidence must be relevant to an issue other than the defendant's character; (2) there must be sufficient proof so that a jury could find that the defendant committed the extrinsic act; and (3) the evidence must possess probative value that is not substantially outweighed by its undue prejudice. *United States v. Jernigan*, 341 F.3d 1273, 1280 (11th Cir. 2003).

1. First Prong: Relevance

Sanchez argues the extrinsic evidence is too different from the charged conduct to be relevant. He draws a distinction with the court martial because there he sent a picture of himself to a minor, not the other way around. And he asserts a "significant distinction between the images of sexual activity alleged in this case as opposed to simply the nude images allegedly sought from S.V." (Doc. 83).

The United States wants to use the extrinsic evidence to show Sanchez's "sexual interest in children, "his knowledge and intent with respect to his communications," his *modus operandi*, his lack of mistake, and, potentially, to rebut attacks on the credibility of Sanchez's victims. (Doc. 95). Sanchez counters that the United States' purposes are not case-specific enough. *Modus operandi* and sexual interest in children can, he admits, be permissible for the purposes listed in 404(b), but they otherwise can only show propensity. (Doc. 111). Sanchez also attacks the Government's *modus operandi* argument by pointing to differences between the extrinsic acts and the charged crimes.

The Court finds that Charge II of the court martial and Sanchez's interactions with S.V. are relevant to the intent and knowledge elements of the charges. On the other hand, Count I of the court martial is not relevant and will be excluded.

2. Second Prong: Sufficient Proof

Sanchez acknowledges that whether a defendant committed a prior extrinsic act is normally a jury question. But he challenges the reliability of the court martial because military criminal law allows for "non-fatal variances between the allegations and proof" and because not "all convictions for indecent conduct under Article 120 involve non-consensual sexual conduct or conduct involving minors." (Doc. 83). As to S.V., Sanchez

4

argues the United States cannot satisfy the second prong unless it proves the photos meet the definition of child pornography. (Doc. 83).

The United States argues that the certified court martial order is sufficient proof of the facts stated. It also argues that S.V.'s testimony—which should be enough on its own—is corroborated by images found on Sanchez's phone and the similarity with his charged *modus operandi*. (Doc. 95).

The Court finds that Charge II of the court martial satisfies the second prong. *See United States v. Floyd*, 522 F. App'x 463, 465 (11th Cir. 2013) ("extrinsic evidence of a prior conviction provides sufficient proof that the defendant committed the prior bad act"). And the S.V. evidence is likewise sufficient. *See United States v. Barrington*, 648 F.3d 1178, 1187 (11th Cir. 2011) (holding that the uncorroborated testimony of someone with personal knowledge of the extrinsic act is sufficient).

        3. <u>Third Prong: Probative Value vs. Undue Prejudice</u>

Sanchez fears the jury may conclude that the extrinsic acts are "morally reprehensible" and if he committed them "he has the propensity to commit sexual offenses, and, therefore, is likely guilty of the charged offenses as well." (Doc. 83). The United States argues the extrinsic evidence is highly probative to knowledge, intent, and *modus operandi*, and that there is no *unfair* prejudice because the "evidence is of the same type as the charged conduct" and "is significantly less egregious." (Doc. 95). Sanchez counters that the United States has not established a need for the extrinsic evidence that outweighs potential prejudice, particularly because the C.R.P. and A.E.P. allegations are already likely to bolster each other. (Doc. 111). The Court does not find

the probative value of the evidence outweighed by any undue prejudice, and the Court can limit potential prejudice with a limiting instruction to the jury.

To be clear, the Court is ruling that Charge II of the Court Martial Order is admissible under Rule 404(b), but the other charges are not. If the United States publishes the Court Martial Order to the jury, it must redact the other charges. The Court is also ruling that the S.V. incident is fair game under Rule 404(b), unless the evidence proffered is otherwise objectionable.

### B. Motion for Severance of Counts

Count 7 requires the United States to present evidence that Sanchez was required to register as a sex offender at the time of the other counts. Sanchez fears the jury will be unable to presume his innocence after they learn he was convicted of other sex crimes. He thus moves to sever Count 7 under Rule 14(a), which requires the Court to "balance the right of the defendant to a fair trial against the public's interest in efficient and economic administration of justice." *United States v. Castronuovo*, 649 F. App'x 904, 918 (11th Cir. 2016).

The United States argues that any prejudice would be minimal because the jury will already hear evidence that Sanchez had a sexual relationship with a child and sent solicitous messages to others, and the Court can give a cautionary instruction to the jury. *See United States v. Slaughter*, 708 F.3d 1208, 1213-14 (11th Cir. 2013) (holding that although evidence of sex-offender status was prejudicial, severance was not required when the jury already heard substantial, sexually explicit evidence and the district court read a limiting instruction). The United States also argues that the issue is moot because the underlying crime (Charge II of the court martial) is admissible under Rule 404(b).

([Doc. 90](#)).  Sanchez counters that being a registered sex offender carries prejudicial connotations separate from the underlying charge, and the inflammatory nature of the charged crimes does not mitigate that prejudice.  ([Doc. 110](#)).

The Court finds that evidence of Sanchez's sex-offender status is not unduly prejudicial given the sexually explicit evidence the jury will hear and the Court's decision not to exclude the underlying crime.  And the Court can instruct the jury not to consider it as evidence for Counts 1-6.  The Court will therefore not sever Count 7.

**C.  Motion in Limine**

Sanchez seeks to exclude the April 12, 2017 controlled call between C.R.P. and Sanchez, the April 13, 2017 conversation between Sanchez and CCPD officers when they executed the warrant to seize his cell phone, and text messages between Sanchez and C.R.P.'s sister.

1. <u>April 12, 2017 Controlled Call</u>

During the call, C.R.P., at the direction of the CCPD, unsuccessfully tried to solicit from Sanchez an admission that the two had sex.  Sanchez argues that because he does not answer C.R.P.'s accusatory questions with incriminating statements, the call should be excluded as irrelevant and overly prejudicial.  ([Doc. 106](#)).  Sanchez also argues that C.R.P.'s statements during the call are hearsay and violate the Confrontation Clause.  But the United States does not seek to admit the statements made in the call for the truth of the matter asserted.  Rather, it argues that Sanchez's denials and erratic behavior show consciousness of guilt.  ([Doc. 112](#) ("He first appears to know her, then briefly tries to deny knowing her, then tells her not to say anything to the police.")).  The United States denies

that Sanchez would be unduly prejudiced by the allegations C.R.P. makes in the call because they are the same allegations Sanchez will face throughout the trial. (Doc. 112).

The Court finds that Sanchez's statements and demeanor during the call are relevant to consciousness of guilt, C.R.P.'s statements provide important context, and the call is not unduly prejudicial because its subject matter is the same criminal conduct for which Sanchez is charged. And because C.R.P.'s statements are not offered to prove the matters asserted, they do not violate hearsay rules or the Confrontation Clause.

### 2. April 13, 2017 Conversation

The day after the controlled call, CCPD officers went to Sanchez's house to execute warrants to seize his cell phone and vehicle. When they arrived, Detective Hicks questioned Sanchez about his relationship with C.R.P. and other issues related to the investigation. During the conversation, Detective Hicks attacks Sanchez's credibility by calling him a "pathological liar" and using other language Sanchez describes as "demeaning." (Doc. 106). Sanchez argues the statements should be excluded under Rule 403. (Doc. 106). The United States disagrees but consents to some redactions. (Doc. 112). The parties have largely agreed on the redactions, but two disputes remain.

On pages 9 – 11 of the interview transcript, Sanchez and Detective Hicks discuss Sanchez's court martial and his status as a registered sex offender. (Doc. 112-3). Sanchez wants the entire exchange redacted, but the United States wants to show the jury what it considers to be misleading statements. The Court finds that Sanchez's mischaracterization of his court-martial conviction is relevant and admissible under Rule 403. In order to minimize prejudice, the Court accepts Sanchez's proposed redactions on pages 9 – 11, except for the following:

> JH: All right. Have you ever been accused of doing something before?
>
> RS: Well, I am a registered sex offender so – but –
>
> …
>
> RS: Yeah. I was in the military…
>
> JH: Oh, so you got charged by military police or something?
>
> …
>
> RS: Yeah. They, uh – it was … um, being nudity in public…

(Doc. 112-3 at 9-11).

On pages 36 – 37, Detective Hicks describes the search warrant to Sanchez, which prompts a discussion about the judge's signature on the warrant and whether Sanchez can talk to a lawyer. (Doc. 112-3). The parties disagree over how much of this exchange should be redacted. The Court finds the following portion admissible:

> JH: Okay. Well, (unintelligible). This is a copy for you. That is a search warrant to take possession of your phone. You can have as much time as you want to read everything over.

(Doc. 112-3 at 36). The Court adopts the rest of Sanchez's proposed redactions to pages 36 – 37.

### 3. Text Messages

Sanchez finally objects to "a series of accusatory text messages sent from [his] former girlfriend, CRP's sister…[f]or much the same reasons as with the controlled call," i.e., Rule 403, hearsay, and the Confrontation Clause. (Doc. 106). The United States wants to use the following part of the exchange to show consciousness of guilt, to explain Sanchez's state of mind during the controlled call, and to provide context for his later denial that the exchange took place:

> RS: wasn't I don't have her snap chat number or anything
>
> RS: Unless she disguise herself saying she was someone she wasn't then Idk even if that was the fact I haven't receive anything that would be her
>
> CV: I just can't believe you were so disgusting to fuck over my family, to engage in sex with my 14 year old little girl and fuck up her life..I wish you all the worst possible this world can offer a sadistic maniac rapist like you! You are sick from the head. I hate you and just like you destroyed my family and my respect for you, you will soon be fucked as well.
>
> RS: What is that supposed to mean at the end, fucked how, and I still care for you always did Idk what going on but Idk what to tell you
>
> RS: I'm going to bed wish you a good night
>
> CV: Man fuck youuu! And your lies, your bullshit. What a waste of man. Sadly I left cuz I had too otherwise I would have gone over to your moms myself and beat the fuck out of you. You have a little girl. How could you? You don't know what you've done…..Go online and check out how old a girl can be to agree to sex, 16. My sister is 14 even if she agreed its considered rape of a minor. Your acting calm but I know you must be dying inside.
>
> CV: I don't wish you shit but to rot in hell where bastards like you rot.

([Doc. 112-2](#)).  The United States does not object to redaction of the final text.

The Court agrees that portions of the exchange are relevant.  The first two RS texts, which appear to be denials of some conduct underlying Counts 1 and 2, could reasonably be interpreted to show consciousness of guilt and are thus relevant to the knowledge element of those counts.  And the following part of the exchange is relevant to Sanchez's state of mind during the controlled call because it could show when he learned of a potential police investigation:

> CV: …I hate you and just like you destroyed my family and my respect for you, you will soon be fucked as well.
>
> RS: What is that supposed to mean at the end, fucked how, and I still care for you always did Idk what going on but Idk what to tell you
>
> RS: I'm going to bed wish you a good night

CV: …Go online and check out how old a girl can be to agree to sex, 16…Your acting calm but I know you must be dying inside.

(Doc. 112-2). But C.V.'s other statements are inflammatory and irrelevant and must therefore be redacted.

Accordingly, it is now

**ORDERED:**

Defendant Romeo Valentin Sanchez's Renewed Motion to Exclude Proposed Extrinsic Evidence (Doc. 83) and Motion in Limine (Doc. 106) are **GRANTED in part and DENIED in part**, and his Motion for Severance (Doc. 84) is **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this February 15, 2019.

*[Signature]*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record