UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

v.                                     CASE NO. 2:17-cr-136-FtM-38MRM

ROMEO VALENTIN SANCHEZ

### SENTENCING MEMORANDUM

The United States submits this sentencing memorandum related to several

Sentencing Guideline and statutory enhancements contained in the Presentence

Investigation Report (PSR) to which the defendant has objected.  For reasons that

follow, the PSR is correctly calculated.

On February 25, 2019, a jury found the defendant guilty as charged of a

seven-count Superseding Indictment.  On July 10, 2019, the Probation Office filed

its final PSR.  The PSR calculated the defendant's adjusted Guideline offense level

to be 51, and his statutory range of imprisonment as 35 years to life.  Among other

calculations, the report applied the following enhancements:

1. ¶¶ 53, 63 – **Distribution** (+2) – Pursuant to U.S.S.G. § 2G2.1(b)(3), the
   defendant engaged in distribution because he "knowingly committed the
   distribution by aiding, abetting, counseled, or willfully caused AE/CRP to
   distribute child pornography images to the defendant."

2. ¶ 73 – **Repeat and Dangerous Sex Offender** (+5) – Pursuant to U.S.S.G.
   § 4B1.5, the defendant engaged in a pattern of activity involving prohibited
   sexual conduct.

3. ¶ 124 – **§ 2251(e) Statutory Enhancement for Prior Conviction** (increased
   statutory range from 15-30 years, to 25-50 years imprisonment) – Pursuant to
   18 U.S.C. § 2251(e), the defendant is subject to a mandatory minimum of 25

years and a maximum of 50 years because he has a prior conviction under Section 920 of title 10 (article 120 of the Uniform Code of Military Justice)"

4. ¶¶ 124, 125 – **§ 2260A Requirement to Register under Count Seven** (10-year consecutive sentence) – The defendant was required to register as a sex offender under the laws of the State of Florida, and under Federal law, and therefore, pursuant to 18 U.S.C. § 2260A, he is subject to a mandatory 10 year sentence consecutive to any other sentence imposed in this case.

Doc. 147. The defendant objects to these enhancements. They are discussed in turn.

## I.   The Distribution Enhancement Under U.S.S.G. § 2G2.1(b)(3) Applies Here Because the Defendant Caused the Victims to Send Him Child Pornography.

Section 2G2.1(b)(3) of the Sentencing Guidelines provides that "[i]f the defendant knowingly engaged in distribution, increase by 2 levels." *Id*. Application Note 3 to Section 2G2.1 provides that "[f]or purposes of subsection (b)(3), the defendant 'knowingly engaged in distribution' if the defendant (A) knowingly committed the distribution, (B) aided, abetted, counseled, commanded, induced, procured, or willfully caused the distribution, or (C) conspired to distribute." *Id*. Application note 1 to U.S.S.G. § 2G2.1 defines "distribution" as:

> "***any*** act, including possession with intent to distribute, production, transmission, advertisement, and transportation, related to the transfer of material involving sexual exploitation of a minor. Accordingly, distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the mere solicitation of such material by a defendant."

*Id*. (emphasis added)

Two issues thus arise. First, did the defendant, as a factual matter, "counsel[], command[], induce[], procure[], or willfully cause[] the distribution?"

2

Second, as a purely legal matter, is distribution to a third party other than the victim and the defendant required for the distribution enhancement to apply? Those questions are considered in turn.

A.   <u>The Defendant Caused the Victims to Distribute Child Pornography.</u>

The evidence at trial showed that the defendant caused the victims to distribute.  Specifically, CRP testified that the defendant constantly and repeatedly demanded that she send him sexually explicit videos and images over the Kik and Skype applications, and that she did, in fact, create and send him sexually explicit videos and images pursuant to those demands.  AEP similarly testified, and the Kik messages corroborated both victims' testimony:

- GX 93 (CRP), p. 2 –

  o Defendant: "Have you had ur period" "**Send me pics**" "I'm so honey horny."

- GX 93 (CRP), p. 7 –

  o Defendant: "Use your tooth brush and show me ducking yourself"
  o CRP: "It's probably gonna hurt a lot"
  o Defendant: "I like to see you in pain" "**Send a videoc of you ducking ursled**"
  o CRP: "Oh you like to see me in pain"
  o Defendant: "Yes" "Turns me on"

- GX 93 (CRP), p. 10 –

  o Defendant: "**Send me a pic of you**"

3

- GX 93 (CRP), p. 11 –

  - Defendant: "Want to see more shape"
  - CRP: "You're such a bug I swear"
  - Defendant: "**I know you can flash me some boobs** with out her [CRP's 10-year-old sister] knowing."
  - CRP: "She's looking at me taking the videos.  Trust me if that was possible I would have done it a long time ago lol." "I've done it on FaceTime without her noticing but that's different"
  - Defendant: "**Go on FaceTime then**."

- GX 93 (CRP), p. 17 –

  - Defendant: "**I want my video women** [sic]"
  - CRP: "Do you not remember what I said.  I'm on my period."

- GX 93 (CRP), p. 17 –

  - Defendant: "**Take a quick me.  I'm horny**"
  - CRP: "You didn't let me finish"
  - Defendant "You should be taking care of me not me watching porn."

- GX 93 (CRP), pp. 20-21 –

  - CRP: "But I cant take pictures with Camilla up.
    . . .
  - Defendant: "**Send me videos**"

- GX 93 (CRP), p. 22 –

  - Defendant: "Um miss phone sex, **Send me something**" . . .
  - CRP: "I miss it.  I want to but I can't rn, you need to wait.  The mirror selfie."
  - Defendant: "Oh ok.  And you never can't rn."
  - CRP: "Because I share a room with a 10 year old and you want pics that take TIME to take so. If I could take a quick one it would be different but no."
  - Defendant: "I hate your sis [10-year-old younger sister].  And you need a door in your bathroom."

- GX 93 (CRP), p. 22 –

  - Defendant: "OMG, Video, please."

- GX 155 (AEP), pp. 2-3 –

  - Defendant (as "Gian King"): "**Send me a better pic of you**" . . .
  - AEP: "I know I am and I'm in public so can't rn"
  - Defendant (as "Gian King"): "If you become mkne" "mine" "**send video**" . . . "**send it**"
  - AEP: "Of my boobs?"
  - Defendant (as "Gian King"): "**And pussy**" "**show me freak**" "Mske me want you" "I'm horny"
  - AEP: "I'm on my period tho"
  - Defendant (as "Gian King"): "Idc (I don't care)"
  - AEP: "I'll send tomorrow.  Cause it's my last day then"
  - Defendant (as "Gian King"): "**Just show me a pic of it**" "**and send good video of you boobs**" "Do you have am ass?"
  - AEP: "Yes"
  - Defendant (as "Gian King"): "**Show me everything**" "Are you"

- GX 155 (AEP), p. 3 –

  - Defendant (as "Gian King"): "flash ugg" "Hair ugg covering (her genitals)" "**Make it good video**"
  - AEP: "I'm done for the night.  I'll send more tomorrow"
  - Defendant (as "Gian King"): "Ugg" "No thanks" "Horny now"
  - AEP: "I'm tired tho"
  - Defendant (as "Gian King"): "For me bae"
  - AEP: "but I'm really tired and Ima go to bed soon"
  - Defendant (as "Gian King"): "**One more**" "And wr done" "Ok?" . . . "**make a video**" "**show me everything**"
  - AEP: "Ok"
  - Defendant (as "Gian King"): "I want to take your cirginit4" "Virginity" "wow" "I like a lot covered pussy but ok" "you are freaky" . . . "made me cum" . . . "I'm sprung" "I hope I can trust you."

- GX 155 (AEP), p. 12

    - Defendant (as "Gian King"): "I do want you" "Prove your ok with it" "And im yours"
    - AEP: "Welll how am I supposed to prove it to u"
    - Defendant (as "Gian King"): "**Send a video of you sucking a guys dick**" "And let me watch it" "I really falling for you" "I'm going to love traveling with you places" "We need get you a passport"
    - AEP: "I will try to get a video and a passport"
    - Defendant (as "Gian King"): "But rule is only guys I approve" "Do you know a guy you can suck" "I don't want someone our age" . . . "How about romeo" "I watch him before"

- GX 155 (AEP), p. 16

    - Defendant (as "Gian King"): "**U said you send me pics**" "I think I'm in love with your body it sexy ma"

- GX 155 (AEP), p. 17

    - Defendant (as "Gian King"): "**Wish your send me a boob pic**" "When your going let me watch you do something"

- GX 155 (AEP), p. 18

    - Defendant (as "Gian King"): "Are you going to thr movies"
    - AEP: "Nah I'm to tired"
    - Defendant (as "Gian King"): "**Still going to ahow me freak videos** tho right"
    - AEP: "when"
    - Defendant (as "Gian King"): "**Rn (right now)**" "**Show me**"
    - Defendant (as "Gian King"): "Gm (good morning)" "Where you at tho yesterday"
    - AEP: "I fell asleep"
    - Defendant (as "Gian King"): "No pics :'(" . . . "Can you make it up to me" . . . "**take a quick on while your getting ready**"

6

- GX 155 (AEP), p. 20

  o Defendant (as "Gian King"): "I miss your body" . . . "**I want to see it again**."

In short, the defendant repeatedly demanded the victims create, and send to him, child pornography, and his demands caused the victims to transmit the pornography from one individual (the victim), to another, (the defendant). Distribution thus occurred.

B. <u>No Third Party Other Than the Victim and the Defendant is Required for the Distribution Enhancement to apply</u>.

For an issue that would seem to reoccur frequently, there does not appear to be controlling Eleventh Circuit precedent, either way, on this question.  There is some guidance, however.  The Eleventh Circuit has held that "'distribution' is defined broadly and can involve various methods of transfer," *United States v. Holt*, 408 F. App'x 229, 239 (11th Cir. 2010), and that "trading images through the Kik Messenger application" constitutes "distribution." *United States v. Diaz*, 615 F. App'x 649, 650 (11th Cir. 2015).  However, the Eleventh Circuit has held, in a different context, that sending images from *one's own* phone to *one's own* computer does not constitute "distribution" under 18 U.S.C. § 2252A(a)(2).  *United States v. Grzybowicz*, 747 F.3d 1296, 1309 (11th Cir. 2014).[1]

---

[1] In that case, the defendant had emailed four images of himself abusing prepubescent female from his phone to his own computer.  The Eleventh Circuit held, "[b]ecause it did not present any evidence that Grzybowicz transferred child pornography to **others** or . . . the government failed to establish 'distribution' within the meaning of § 2252A(a)(2)." *Id*. at 1309.

The closest case, although persuasive, is *United States v. Hernandez*, 894 F.3d 1104 (9th Cir. 2018).  In that case, the defendant "took photos of himself and [the victim] engaged in sexual activity together, and later sent those photos to [the victim] via his mobile phone."  *Id*. at 1106.   The defendant argued that "'distribution' occurs only if [the child pornography images] are shared with a third party."  *Id*. at 1107.  The Ninth Circuit rejected the defendant's argument and held that distribution to a third party is not required for the "distribution" enhancement to apply.

The *Hernandez* Court held further "[t]he term 'any' at the outset of the first sentence . . . of the Sentencing Guidelines 'is a term of great breadth.'"  *Id*. (citing *United States v. Hecht*, 470 F.3d 177, 182–83 (4th Cir. 2006)) (citation omitted). After noting other cases where the Ninth Circuit interpreted the term "any" broadly, the *Hernandez* Court held "there are myriad methods to produce, transmit, share, and exchange sexually explicit material," and concluded "the distribution enhancement under U.S.S.G. § 2G2.1(b)(3) applies when the illicit pornographic images are transferred [from the defendant] to a minor victim depicted in the images."  *Id*.  The reasoning of *Hernandez* is sound, and is consistent with the purpose of the Guideline.  This Court should follow it.

In addition to *Hernandez*, the text of the Application Note is particularly instructive here.  Application note U.S.S.G. § 2G2.1 defines "distribution" as "any act . . . related to the transfer of material involving the sexual exploitation of a minor," but continues to provide critical details – "distribution includes posting

material involving the sexual exploitation of a minor on a website for public viewing but does not include the ***mere solicitation*** of such material by the defendant." *Id.* (emphasis added).  Critically, the Application Note includes only mere solicitation" and does not include "receipt or solicitation."[2]  The exclusion of "receipt" was deliberate because, in at least one other portion of the Guidelines, the Sentencing Commission ***does*** use the phrase "receipt and solicitation" together. U.S.S.G. § 2G2.2(b)(1) (providing for a two-level reduction where, *inter alia*, "the defendant's conduct was limited to the ***receipt or solicitation*** of material involving the sexual exploitation of a minor.") (emphasis added).  Because the Commission did not expressly exclude "receipt" from the distribution enhancement, it clearly intended the distribution enhancement to cover a situation like this one – where the defendant "received" child pornography.

Indeed, distribution is a necessary precondition to receipt.  The defendant knew that, to receive child pornography from the victims, they would have to distribute it to him.  *See United States v. Reingold*, 731 F.3d 204, 229 (2d Cir. 2013) (holding, in the context of peer-to-peer sharing "even if Reingold's primary intent in joining GigaTribe was not to distribute but more to just receive child pornography, the record makes plain that he both knew from the start that distribution was a necessary condition of receipt.")

---

[2] Under the statutory interpretation canon *expressio unius est exclusio alterius*, the expression of one thing implies the exclusion of the other.

In conclusion, distribution in the plain sense of the word occurred here, and the defendant knowingly caused it.  The defendant did not, for example, take the videos on his own phone and keep them.  Distribution was thus a necessary precondition to the defendant's receipt of the videos.  The distribution enhancement thus applies.

## II.    The Repeat and Dangerous Sex Offender Enhancement Applies Because the Defendant Engaged in a Pattern of Prohibited Sexual Conduct, and Because U.S.S.G. § 4B1.5(a) Does Not Apply.

Section 4B1.5(b) of the United States Sentencing Guidelines provides a 5-level offense level enhancement for "repeat and dangerous sex offenders against minors."  *Id.*  That Section states:

> "[i]n any case in which the defendant's instant offense of conviction is a covered sex crime, neither § 4B1.1 ***nor subsection (a)*** of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct: (1) the offense level shall be 5 plus the offense level determined under Chapters Two and Three . . . [and] (2) The criminal history category shall be the criminal history category determined under Chapter Four, Part A."

*Id.* (emphasis added).  Two issues again arise.  First, the Court must determine whether, as a factual matter, "the defendant engaged in a pattern of activity involving prohibited sexual conduct."  Second, the Court must determine whether "subsection (a)" of § 4B1.5 applies.  These issues are considered in turn.

A.   The Defendant Engaged in a "Pattern of Activity Involving Prohibited Sexual Conduct" Because He Caused the Victims to Produce Child Pornography on Multiple Occasions, and Because he Engaged in a Months-Long Sexual Relationship with CRP.

The first issue is decidedly easier.  Application Note 4(A) to § 4B1.5 defines "prohibited sexual conduct" as "(i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography . . . . It does not include receipt or possession of child pornography."  *Id.*   Application note 4(B) defines "a pattern of activity involving prohibited sexual conduct" as anytime a defendant engages in prohibited sexual conduct "on at least two separate occasions."  *Id.*

Here, the defendant "engaged in a pattern of sexual conduct" for at least two reasons.  First, the jury convicted the defendant of producing of child pornography based upon conduct that occurred on multiple occasions.  That, alone, is sufficient to establish that the defendant engaged in a "pattern of activity" involving prohibited sexual conduct.  Second, the jury convicted the defendant of two counts of Enticement of a Minor in violation of 18 U.S.C. § 2422, which included in-person sexual intercourse with CRP, then 14 years old, on multiple different occasions.  That also, alone, would also establish that the defendant "engaged in a pattern of sexual conduct" because Enticement of a Minor in violation of 18 U.S.C. § 2422, is an "offense described in 18 U.S.C. § 2426(b)(1)(A) or (B)."

Moreover, the trial evidence corroborated the testimony.  Specifically, the previously cited Kik messages corroborated the production counts.  But there are

others to corroborate CRP's testimony that the defendant had sex with her on

multiple occasions:

> CRP:  I can't judge her though.  I mean I'd never date a pastor.  But I still can't judge her because I'm fucking you.
>
> Defendant:   You feel bad about that
>
> CRP:  Feel bad about what
>
> Defendant:   Ducking me
>
> CRP:  No, not at all.

GX 93 at 8.

> CRP:  . . . You see I thought I could agree with just sex but I quickly realized that I wanted more than that.

GX 93 at 13.

> CRP:  No, I'm fucking you because I enjoy doing it.  I'm not going to fuck you to get back at someone I don't care about lmao
>
> Defendant:   What do you enjoy about it
>
> CRP:  Every part of it.

GX 93 at 16.  Therefore, the defendant engaged in a "pattern" of prohibited sexual

conduct under § 4B1.5(b).

> B.    <u>§ 4B1.5(a) Does Not Apply Here, and Thus § 4B1.5(b) Applies, Because the Defendant's Prior Military Conviction Does not Fall Within the Guideline Definition of "Prior Sex Offense Conviction."</u>

In short, U.S.S.G. § 4B1.5(b), which imposes a 5-level base offense level

enhancement, applies only to defendants who ***do not*** have a prior "sex offense

12

conviction" as that term is defined in § 4B1.5.  *See also* U.S.S.G. § 4B1.5(a).[3]

Application Note 3(A)(ii) to § 4B1.5 defines "Sex Offense Conviction"  as "(I) . . . any offense described in 18 U.S.C. §§ 2426(b)(1)(A) or (B), if the offense was perpetrated against a minor" but "(II) does not include trafficking in, receipt of, or possession of, child pornography. . . ."  *Id.*   Section 2426(b) provides, in turn, that:

> (1) the term 'prior sex offense conviction' means a conviction for an offense –
>
>     (A) under this chapter [117], chapter 109A, chapter 110, or section 1591; or
>
>     (B) under State law for an offense consisting of conduct that would have been an offense under a chapter referred to in subparagraph (A) if the conduct had occurred within the special maritime and territorial jurisdiction of the United States; and
>
> (2) the term 'State' means a State of the United States and the District of Columbia, and any commonwealth, territory, or possession of the United States.

*Id. See also United States v. Smith*, 336 F. App'x 978, 984 (11th Cir. July 17, 2009) (articulating the statutory scheme under § 2426(b)).  The defendant's military conviction is thus not a "Sex Offense Conviction" under 18 U.S.C. §§ 2426(b)(1)(A) or (B), and thus not a "Sex Offense Conviction" under U.S.S.G. § 4B1.5, for at least the following two reasons.

---

[3] Defendants who do have a prior "sex offense conviction" are subject to penalties set forth in a specific chart or, if higher, subject to the offense level calculated in Chapter 2.  In this case, as a practical matter, if § 4B1.5(a) applied, the defendant would likely not receive any enhancement for being a "repeat and dangerous sex offender" because his Chapter 2 offense level exceeds the offense level from the chart.

1.    *The Term "Prior Sex Offense Conviction" Under 18 U.S.C. § 2426 does not Include Military Offenses – Only Specifically-Enumerated Federal Convictions and Equivalent State Law Equivalents.*

Sections 2426(b)(1)(A) and (B) apply to "a conviction for an offense – (A) under this chapter, chapter 109A, chapter 110, or section 1591; or (B) under State law . . . ."  Section 2426(b)(2) defines "State" as "a State of the United States, the District of Columbia, and any commonwealth, territory, or possession of the United States."

Here, the defendant's prior conviction was under the Uniform Code of Military Justice – not under Chapters 109A, 110, 117, or 18 U.S.C. § 1591, nor under State law.  It therefore does not qualify as a "prior sex offense" under §§ 2426(b)(1)(A) and (B), and thus also not under § 4B1.5.  There are other places in the United States Code that directly reference the Uniform Code of Military Justice in the context of prior convictions, *see* 18 U.S.C. § 2251(d), which shows that the omission of the Uniform Code of Military Justice from § 2426(b) was intentional.   *See also United States v. Eyster*, 386 F. App'x 180, 182 (3d Cir. 2010) (holding, and the government conceding, that the defendant's "1988 rape conviction under the Uniform Code of Military Justice ('UCMJ')" did not qualify as a "sex offense conviction for purposes of U.S.S.G. § 4B1.5"); *see also United States v. Nielsen*, 694 F.3d 1032, 1037 (9th Cir. 2012) (holding that juvenile convictions are not "prior sex offenses" for purposes of § 4B1.5(a) because, in part, the Guideline

does not expressly reference juvenile adjudications, to their exclusion indicated deliberate intent that juvenile adjudications do not qualify).  Therefore, the defendants' prior military conviction is not a "prior sex offense."

> 2. *The Defendant's Prior Military Conviction is not a "Prior Sex Offense" Because, Even if § 2426 Included Military Offenses, the Underlying Conduct for His Military Conviction Would not be a Crime Under Chapters 109A, 110, 117, or 18 U.S.C. § 1591.*

Section 2426(b)(1)(A) articulates that a "prior sex offense" is an offense under Chapters 117, 109A, 110, and 18 U.S.C. § 1591 of the United States Code. Those Chapters relate to the following offenses:

1. **Chapter 109A** – Sexual Abuse;

2. **Chapter 110** – Sexual Exploitation and Other Abuse of Children;

3. **Chapter 117** – Transportation for Illegal Sexual Activity and Related Crimes;

4. **18 U.S.C. § 1591** – Sex Trafficking of Children or by force, fraud, or coercion.

In addition, § 2426(b)(1)(B) provides that the term "prior sex offense" also includes offenses "under State law for an offense consisting of conduct that would have been an offense under" one of these three chapters "if the conduct had occurred within the special maritime and territorial jurisdiction of the United States."  *Id*.

Here, even if the UCMJ were considered "State law," the underlying conduct for the defendant's prior conviction would not be an offense under one of

15

the three enumerated chapters or one enumerated statute if the conduct had

occurred in the territorial jurisdiction of the United States.  The defendant's prior

military judgment provides the following:

> CHARGE II: Article 120.  Plea:  NG.  Finding: G.
>
> Specification:  Did, within the continental United States, between on or about 1 February 2010 and on or about 31 March 2010, wrongfully commit indecent conduct, to wit: sending a picture of himself holding his exposed penis and a picture of a woman with her breasts and buttocks exposed to GS, then a child under 16 years of age, over the internet. Plea: NG.  Finding: G.

GX 57.  The defendant's conduct – sending adult pornography *to* a minor – does

not fall within any of the above categories.[4]   Therefore, even if § 2426

encompassed military crimes, which it does not, the specific conduct that underlies

the defendant's military conviction would constitute an enumerated offense even if

there was jurisdiction.   In sum, because the defendant's prior military conviction

does not qualify as a "prior sex offense" under § 2426(b), and by extension,

U.S.S.G. § 4B1.5(a), then § 4B1.5(b) applies, and the defendant is subject to a five-

level enhancement for being a "Repeat and Dangerous Sex Offender."

---

[4] By contrast, the closest analogous federal statute to the conduct that underlies the defendant's prior military offense is 18 U.S.C. § 1470 – Transfer of Obscene Material to Minors.  That statute, however, falls under Chapter 71 of the United States Code, and not one of the enumerated chapters.

III.    **The Statutory Enhancements in 18 U.S.C. § 2251(d) Apply to the Defendant Because He has a Prior Military Conviction Under UCMJ Article 120.**

Pursuant to 18 U.S.C. § 2251(e), a defendant found guilty of a crime in § 2251 shall be sentenced to 15 to 30 years.  If, however, the defendant has a qualifying prior conviction:

> "under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be . . . imprisoned for not less than 25 years nor more than 50 years."

*Id.*

Here, the prior military conviction triggers the enhanced penalties because the conviction was pursuant to UCMJ Article 120, which the statute expressly includes – full stop.  The Court can and should stop with plain and clear statutory text.  *Lewis v. Barnhart*, 285 F.3d 1329, 1331 (11th Cir.2002) ("As with any question of statutory interpretation, we begin by examining the text of the statute to determine whether its meaning is clear"); *see also Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1185 (11th Cir.1997) ("In construing a statute we must begin, and often should end as well, with the language of the statute itself.").

The defendant objects, and argues that the Court's work is not done – that it should go beyond clear statutory text to glean some purported congressional intent to the contrary.  Without citation, the defendant argues that, because Article 120

did not include the defendant's crime of "Indecent Acts" when Congress enacted

§ 2251(e)'s enhancement provision, Congress did not intend the offense of

"Indecent Acts" to be an offense that triggered § 2251(e)'s enhanced penalties.

The defendant's argument fails for a number of reasons. First, what matters

is what Congress did – not what the defendant believes Congress intended to do.

Here, Congress included all Article 120 offenses in § 2251(e)'s enhancement

provisions. When a statute is clear, there is no need to interpret some deeper

meaning or intent. Congress could have amended § 2251(e) to exclude certain

Article 120 offenses when Article 120 was amended, but it chose not to.

Second, even if Congressional intent mattered, Congress *did* intended to

include the conduct underlying "Indecent Acts" as a predicate offense under

§ 2251(e) because it includes a nearly identical federal statute. Specifically,

§ 2251(e) includes, as a predicate crime, all offenses in Chapter 71. One Offense

under Chapter 71 is Transfer of Obscene Material to Minors in violation of 18

U.S.C. § 1470. That statute prohibits a defendant from using "any facility or

means of interstate or foreign commerce" to "knowingly transfer[] obscene matter

to another individual who has not attained the age of 16 years . . . ." *Id*.

That is identical, or nearly identical, to the defendant's prior military

conviction here. That conviction was for "sending a picture of himself holding his

exposed penis and a picture of a woman with her breasts and buttocks exposed to

GS, then a child under 16 years of age, over the internet." *Id*. By including a

nearly identical federal statute, Congress clearly intended to include a nearly

18

identical military statute.  Specifically, it would make little sense for Congress to intend to include, as a § 2251(e) predicate, "Transfer of Obscene Material to Minors," but to exclude a nearly identical military statute that was intended to remedy the same harm.[5]

In conclusion, because Article 120 offenses are categorically included as § 2251(e) predicates, and because congress intended the type of harm underlying the defendant's prior conviction to constitute a predicate offense under § 2251(e), the enhanced penalties should and do apply here.

## IV. The Defendant is Subject to a 10-Year Consecutive Sentence Pursuant to 18 U.S.C. § 2260A Because, at the Time he Committed the Offenses in this Case, he Was Required to Register as a Sex Offender Under Florida and Federal Law

The defendant has objected to the application of the penalty provisions contained in 18 U.S.C. § 2260A and, specifically, claims the evidence produced at trial was insufficient to sustain a conviction on that Count.  The jury has already convicted the defendant of the offense in § 2260A, however, so the Court must impose those penalties.  The Court can stop there.

Nevertheless, the United States responds to the defendant's argument in substance, to the extent the Court intends to reach the merits.  Section 2260A provides:

---

[5] The defendant's objection to the PSR suggests that a contact offense is required to trigger the enhanced penalty provisions under § 2251(e).  Many of the other predicate offenses under § 2251(e)'s enhancement provisions, however, are not "contact offenses."

"[w]hoever, being required by Federal or other law to register as a sex offender, commits an [enumerated] felony offense involving a minor . . . shall be sentenced to a term of imprisonment of 10 years in addition to the imprisonment imposed for the offense under that provision. The sentence imposed under this section shall be consecutive to any sentence imposed for the offense under that provision."

*Id.* In short, § 2260A applies if a defendant was required to register under Federal or State law at the time he committed an enumerated offense.[6] Here, the evidence showed that the defendant was legally required to register under both Florida and Federal law for at least the following three reasons.

A.  <u>The Defendant Was Required to Register as a Sex Offender Under Florida Law Because His Prior Sex Offense was "Similar" to the Florida Offense of "Transmission of Material Harmful to Minors"</u>

Florida law requires sex offenders to register. Section 943.0435(1)(h)1.a.(I) defines "Sexual Offender" as "a person who . . . [h]as been convicted of committing . . . any of the criminal offenses proscribed in the following statutes in this state or similar offenses in another jurisdiction . . . s. 847.0138." *Id.* Section 847.0138(2) of the Florida Statutes criminalizes "Transmission of Materials Harmful to Minors," and specifically provides "any person who knew or believed that he or she was transmitting an image, information, or data that is harmful to minors, as defined in s. 847.001, to a specific individual known by the defendant to be a minor commits a felony of the third degree . . ." Fla. Stat. § 847.0138(2).

---

[6] Production of Child Pornography in violation of 18 U.S.C. § 2251 and Enticement of a Minor in violation of 18 U.S.C. § 2422 are both enumerated offenses.

Florida Pattern Instructions for Transmission of Materials Harmful to Minors in violation of Fla. Stat. § 847.0138 provides the following elements for that offense:

1. (Defendant) knowingly sent an image, information or data that [he] [she] knew or believed to be "harmful to minors."

2. (Defendant) sent the image, information or data to a specific individual who was either actually known by [him] [her] to be a minor or believed by [him] [her] to be a minor.

3. (Defendant) sent the image, information or data via electronic mail.

Fla. Pattern. Instr. § 11.21. The pattern instructions continue "[a]n image, information, or data that is 'harmful to minors' means any reproduction, imitation, characterization, description, exhibition, presentation, or representation, of whatever kind or form, depicting nudity, sexual conduct, or sexual excitement when it: (a) Predominately appeals to a prurient, shameful, or morbid interest; (b) Is patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material or conduct for minors; and (c) Taken as a whole, is without serious literary, artistic, political, or scientific value for minors."

In this case, the defendant was convicted of "indecent conduct, to wit: sending a picture of himself holding his exposed penis and a picture of a woman with her breasts and buttocks exposed to GS, then a child under 16 years of age, over the Internet." The certified copy of his judgment alone – a *Shepard* document – establishes that the crime is "similar" to Fla. Stat. § 847.0138. *See, e.g. United States v. Macias*, 53 M.J. 728, 732 (A. Ct. Crim. App. 1999) (interpreting a similar state law and holding "[a]lthough appellant was convicted by another jurisdiction

21

(i.e., U.S. military), Arizona law requires him to register as a sex offender if the crime of which he was convicted would have required registration if committed in Arizona."); *see also United States v. Molina*, 68 M.J. 532, 535 (C.G. Ct. Crim. App. 2009) (holding that, even though military law did not require the defendant to register for the defendant's military conviction, California law required the defendant "to register with the police as a sex offender for any indecent exposure offense, even in a military court.")

In addition, it is worth noting that FDLE determined that the defendant was required to register because his military conviction was "similar to FS 847.0138(2)," GX 162, and that the defendant has, in fact, registered as a sex offender in Florida since he moved here in 2012, GX 157. The defendant was thus required to register under Florida law because is prior military offense was similar to the Florida statute that criminalizes Transmission of Materials Harmful to Minors.

    B.    <u>The Defendant Was Required by Florida Law to Register as a Sex Offender Because He was Previously Designated as a Sex Offender in Massachusetts.</u>

Section 943.0435(1)(h)1.b. of the Florida Statutes also defines "Sexual Offender" as "a person who . . . [e]stablishes or maintains a residence in this state and" carries "another sexual offender designation in another state or jurisdiction and was, as a result of such designation, subjected to registration or community or public notification, or both . . . without regard to whether the person otherwise meets the criteria for registration as a sexual offender." *Id*. Plainly stated, if an

22

individual was required to register in another state, the individual is also required to register in Florida.

Here, the defendant was required to register as a sex offender in Massachusetts (and under Federal Law).  GX 184, 185.  The Defendant was therefore required to register as a sex offender in the State of Florida.

C.    The Defendant was Required to Register as a Sex Offender Under
       Federal Law.

Under the Sexual Offender Registration and Notification Act (SORNA), "[a] sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides . . . ."  34 U.S.C. § 20913(a).  A "sex offender" is "an individual who was convicted of a sex offense." 34 U.S.C. § 20911(1).  A "sex offense" is, *inter alia*, (1) "a criminal offense that is a specified offense against a minor," or (2) "a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. § 951 note) . . . ."  34 U.S.C. § 20911(5)(A)(iv).  A "criminal offense" is "a State, local, tribal, foreign, or military offense . . . or other criminal offense."  34 U.S.C. § 20911(6).  Section 951 specifies that "[t]he Secretary of Defense shall specify categories of conduct . . . as the secretary shall deem appropriate" for registration.  PL 105-119, Title 1, § 115(a)(8)(C)(i) (1997).

The Secretary of Defense has specified, in Department of Defense Instruction 1325.07, the offenses for which those who have been convicted must register.  Appendix 4 to that Instruction states that "[a] Service member who is

convicted in a general or special court-martial of any of the offenses listed in Table

4 must register with the appropriate authorities in the jurisdiction . . . in which he

or she will reside, work, or attend school upon leaving confinement,[7] or upon

conviction if not confined." *See* Department of Defense Instruction Number

1325.07.[8]

Because the UCMJ has been amended several times, Table 4 contains three

categories of offenses – those defined prior to October 1, 2007, those defined from

October 1, 2007 through June 28, 2012, and those defined after June 28, 2012.[9]

The defendant's prior military conviction for "Indecent Acts," sustained on July

21, 2011, falls into the second category of offenses – those defined from October 1,

2007 through June 28, 2012.  Table 4 of the Defense Instruction includes the statute

---

[7] The defendant, in this case, was sentenced to 15 months confinement for his prior military offense.  GX 57 at 3.

[8] Can be found at https://fas.org/irp/doddir/dod/i1325_07.pdf, p. 78; *see also* https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodi/132507p.pdf.

[9] The Military Court in *United States v. Quick*, 74 M.J. 517, 522 (N-M. Ct. Crim. App. 2014), aff'd, 74 M.J. 332 (C.A.A.F. 2015), described the amendment to the statute at issue here:

> In 2007, the Article 134, UCMJ offense of "indecent acts with another" became subject to prosecution under Article 120(k), UCMJ as an "indecent act." *See* Manual for Courts–Martial, United States (2008 ed.), App. 23 at A23–15.  In 2012, Congress created Article 120c, UCMJ to encompass the offenses in the 2007 version of Article 120(k); however, Article 120c was only "intended to criminalize non-consensual sexual misconduct that ordinarily subjects an accused to sex offender registration."  Manual for Courts–Martial, United States (2012 ed.), App. 23 at A23–16.  The 2012 edition of the Manual does not specifically include an "indecent act" charge under Article 120c or 134, UCMJ.

*Id.*

under which the defendant was previously convicted as an offense requiring the defendant to register.  *See Id*. at 81 (including "120(k), 120-K1, Indecent Acts"); *see also* GX 57 (indicating the defendant was convicted of "Indecent Conduct" under "Article 120"); GX 184 at 4 (indicating the defendant was previously convicted of "120K1a – Indecent Act.")  Therefore, because SORNA required defendant to register as a sex offender for "a military offense specified by the Secretary of Defense," and because the Secretary of Defense has specified the defendant's conviction for "Indecent Acts" under Article 120(k)(1), as an offense for which the defendant must register, the defendant was required to register as a sex offender under federal law.

In conclusion, for all of the preceding reasons, the Presentence Investigation Report correctly calculates the defendant's Sentencing Guideline Range under U.S.S.G. §§ 2G2.1(b)(3) and 4B1.5(b) and his statutory penalties under 18 U.S.C. §§ 2251(e) and 2260A.

Respectfully submitted,

MARIA CHAPA LOPEZ
United States Attorney

By:   */s/ Charles D. Schmitz*
CHARLES D. SCHMITZ
Assistant United States Attorney
United States Attorney No. 159
2110 First Street, Suite 3-137
Ft. Myers, Florida 33901
Telephone:  (239) 461-2200
Facsimile:    (239) 461-2219
E-mail:  Charles.Schmitz@usdoj.gov

**U.S. v. Romeo Valentin Sanchez**          **Case No. 2:17-cr-136-FtM-38MRM**

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 7, 2019, I electronically filed the foregoing

with the Clerk of the Court by using the CM/ECF system which will send a notice

of electronic filing to the following:

> Russell Rosenthal
> Russ_Rosenthal@fd.org

> *s/ Charles D. Schmitz*_____
> CHARLES D. SCHMITZ
> Assistant United States Attorney