**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FT. MYERS DIVISION**

**UNITED STATES OF AMERICA**

**v.**                                        **Case No.:2:17-cr-136-FtM-38MRM**

**ROMEO VALENTIN SANCHEZ**
_____/

**SENTENCING MEMORANDUM;**
**REPLY TO THE GOVERNMENT'S SENTENCING MEMORANDUM;**
**AND MOTION FOR VARIANCE**

The defendant, ROMEO SANCHEZ, by and through undersigned counsel, files this Sentencing Memorandum; Reply to the Government's Sentencing Memorandum; and Motion for Variance, and states:

**INTRODUCTION**

Based on the offenses of conviction, and dependent on the Court's ruling as to the applicable statutory minimum sentences, Mr. Sanchez cannot be sentenced to less than 25 years (300 months) or 35 years (420 months). The United States Probation Office has calculated a guideline range of life imprisonment. While Mr. Sanchez disputes most of the guideline increases which result in this guideline range, he maintains that any sentence above the severe statutory minimum would be greater than necessary to achieve any reasonable objectives of sentencing.

1

**CHARGED CONDUCT**

Mr. Sanchez was tried by a jury and convicted of:

Count One, April 1, 2016-April 30, 2017, enticement of CRP to engage in criminal sexual activity, to wit: production of child pornography, lewd and lascivious sexual battery/lewd and lascivious sexual molestation, and sexual performance by a child, all in violation of 18 U.S.C. § 2422(b).

The government maintained this count is supported by evidence that Mr. Sanchez induced CRP, the fifteen-year old sister of his former girlfriend, to take pictures and videos of herself, which she then forwarded to him. The government further maintained that Mr. Sanchez had a sexual relationship with CRP during the time alleged. The government presented evidence that there were images of CRP on Mr. Sanchez's phone. A very small number actually constituted child pornography.

Count Two, April 1, 2016-April 30, 2017, Production of child pornography by inducing CRP to do so, in violation of 18 U.S.C. §§ 2251(a) and (e);

The evidence as to Count Two duplicated the evidence as to Count One. The government based Count Two upon the allegation that Mr. Sanchez induced CRP to produce the same images of child pornography as alleged in Count One.

Count Three, April 25, 2016 - April 30, 2017, possession of a cellular telephone containing child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2);

The evidence as to Count Three was that a cellular phone seized from Mr. Sanchez contained the images of CRP referred to above.

Count Four: May 26, 2017-June 10, 2017, enticement of AEP to engage in criminal sexual activity, to wit: production of child pornography, lewd and lascivious battery, and sexual performance by a child all in violation of 18 U.S.C. § 2422(b);

The government alleged in Count Four that Mr. Sanchez persuaded a 14 year-old female, identified as AEP, to create images of herself and forward those images to him. This was done allegedly by the use of fictitious person, purportedly a thirteen year old boy. While the requests were more generic, one photograph of AEP was of her touching her genital area. The remainder of the photographs, while suggestive, would not be considered child pornography.

Count Five: May 26, 2017-June 10, 2017 enticement of AEP to produce child pornography in violation of 18 U.S.C. §§ 2251(a) and (e);

The conduct alleged in this count is identical to Count Four.

Count Six: May 22, 2017-June 22, 2017 possession of a cellular telephone containing child pornography in violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2).

When Mr. Sanchez was arrested on the CRP charges, a second cellular phone was seized. The contents of this phone included the images of AEP.

Count Seven:  April 1, 2016- June 10, 2017 committing a felony offense involving a minor, to wit: Counts One, Two, Four, and Five when required to register as a sex offender, in violation of 18 U.S.C. § 2260A.

The government maintains that Mr. Sanchez was required to register as a sex offender as a result of a 2011 military conviction under Article 120 for "indecent act."

**<u>SENTENCING LIMITATIONS</u>**

### A.  STATUTORY SENTENCING RANGES

The violations of 18 U.S.C. § 2422(b) alleged in Counts One and Four have a minimum penalty of ten years, and a maximum penalty of life imprisonment. Counts Three and Six carry a statutory maximum penalty of ten years imprisonment. Count Seven requires a mandatory consecutive ten years imprisonment.

There is a substantial dispute as to the statutory range for Production of Child Pornography under 18 U.S.C. § 2251 as alleged in Counts Two and Five. For the reasons that follow, Mr. Sanchez maintains that the statutory range is limited to a minimum of fifteen and a maximum of thirty years. .

The Protect Act, signed into law on April 30, 2003, amended the penalty provisions of section 2251(d) by creating a new section 2251(e). This section provides that a defendant who violates § 2251(a) "shall be fined ... and imprisoned for not less than 25 years" if he has a prior conviction under [chapter 110], section 1591, chapter 71, chapter 109A, or chapter 117, *or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice)*, or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." (Emphasis added).

The PSR maintains the enhancement provision applies based upon Mr. Sanchez's 2011 conviction under Article 120 conviction for "indecent act." (10 U.S.C. § 920(k))(PSR ¶ 78).  The specification alleged is that Mr. Sanchez "between on or about February 1,

2010, and on or about March 31, 2010, wrongfully commit[ed] indecent conduct, to wit: sending a picture of himself holding his exposed penis and a picture of a woman with her breasts and buttocks exposed to GS, then a child under 16 years of age, over the internet."

Article 120 (10 U.S.C. § 920) was substantially different, and much narrower, in 2003 when Congress added convictions under that provision to the predicate offenses for § 2251(e). Indeed, Mr. Sanchez's prior offense did not exist within Article 120 at the time. At that time, Article 120 was limited to the more serious offenses of "rape" (non-consensual sexual intercourse) and "carnal knowledge" (sexual intercourse with a non-spouse under 16). *See* 10 U.S.C. § 920 (2003).[1] A substantial re-write of Article 120 took

---

[1] As it read in 2003, 10 U.S.C.A. § 920 Art. 120. Rape and Carnal knowledge, was limited to the following:

(a) Any person subject to this chapter who commits an act of sexual intercourse, by force and without consent, is guilty of rape and shall be punished by death or such other punishment as a court-martial may direct.

(b) Any person subject to this chapter who, under circumstances not amounting to rape, commits an act of sexual intercourse with a person--

(1) who is not that person's spouse; and

(2) who has not attained the age of sixteen years;

is guilty of carnal knowledge and shall be punished as a court-martial may direct.

(c) Penetration, however slight, is sufficient to complete either of these offenses

(d)(1) In a prosecution under subsection (b), it is an affirmative defense that--

(A) the person with whom the accused committed the act of sexual intercourse had at the time of the alleged offense attained the age of twelve years; and

effect in October, 2007, which included the addition of subsection (k). This subsection simply provided "--Any person subject to this chapter who engages in indecent conduct is guilty of an indecent act and shall be punished as a court-martial may direct," Mr. Sanchez maintains that his conviction cannot serve as a basis for the statutory enhancement as it was not part of Article 120 at the time § 2251(e) was amended. Significantly, this provision was removed from Article 120 later in 2011. Pub.L. 112-81, Div. A, Title V, § 541(a)(6), Dec. 31, 2011, 125 Stat. 1406.

The government has not cited an example where later additions to Article 120 were used as an enhancement under §2251(e). Nor has Mr. Sanchez located one. Nonetheless, the government asserts that Congress must have intended to include "indecent acts" because it included as a predicate all offenses in Chapter 71, including Transfer of Obscene Materials to a Minor in violation of 18 U.S.C. § 1470. (Doc. 155: Pg. 18). There are problems with this assertion. Under the government's view, Congress would have known in 2003, when it amended § 2251(e), that it would someday amend Article 120 to include "indecent acts." Further, in the government's view, by including Article 120 as a predicate, it intended to include this future crime. Additionally, the transfer

---

(B) the accused reasonably believed that that person had at the time of the alleged offense attained the age of sixteen years.

(2) The accused has the burden of proving a defense under paragraph (1) by a preponderance of the evidence.

of materials was *how* Mr. Sanchez was found to have violated subsection (k). The actual offense was much broader. The elements of an indecent act under (k) were simply: (a) that the accused engaged in certain conduct; and (b) that the conduct was indecent. *United States v. Miles,* No. NMCCA 201300272, 2014 WL 4129359, at *5 (N-M. Ct. Crim. App. Aug. 21, 2014). This statute has been held to encompass activity which would likely not have even been criminal outside the military. *See e.g. United States v. Quick*, 74 M.J. 517 (N-M. Ct. Crim. App. 2014), aff'd, 74 M.J. 332 (C.A.A.F. 2015)(upholding conviction for indecent conduct based on defendant's participation in allegedly consensual group sexual encounter in his room in the barracks). Under the rationale suggested by the government an offense involving consensual activity between adults would still trigger the § 2251(e) statutory enhancement. Moreover, "indecent acts with another," was previously recognized as a military offense under Article 134. *See Miles* 2014 WL 4129359, at *5. In addition to placing the old Article 120 into § 2251(e), Congress could have also added Article 134 if a conviction for indecent acts was intended to trigger the statutory enhancement.

Mr. Sanchez maintains that it is clear that the enhancement under § 2251(e) should not be triggered by an offense that was added to Article 120 after enactment. This is particularly true here where the offense was significantly less serious than those offenses in Article 120 at the time. When "a criminal statute is ambiguous in its application to certain conduct, the rule of lenity requires it to be construed narrowly." *United States v. Jenkins*, 58 F.3d 611, 613 (11th Cir. 1995).

Mr. Sanchez maintains, therefore, that the total mandatory minimum required for all offenses is 25 years, as opposed to the 35 years suggested by the PSR.

## B. SEPARATE SENTENCES CANNOT BE IMPOSED FOR THE ENTICEMENT COUNTS AND THE PRODUCTION COUNTS

The allegations supporting Counts One and Two are identical, as are the allegations supporting Counts Four and Five. Mr. Sanchez maintains, therefore, that he cannot be sentenced on both Counts One and Two. Nor can he be sentenced on both Counts Four and Five.

The Double Jeopardy clause bars courts from "prescrib[ing] greater punishment than the legislature intended" to impose for a single offense. *Rutledge v. United States*, 517 U.S. 292, 297 (1996) (quoting *Missouri v. Hunte*r, 459 U.S. 359, 366, (1983)). There is a rebuttable presumption that "where two statutory provisions proscribe the same offense, a legislature does not intend to impose two punishments for that offense." *Id.* (internal quotations omitted). Thus, if (a) two statutory provisions "proscribe the same offense" and (b) it is not clear that the legislature intended multiple punishments for the offense, then the double jeopardy clause protects a defendant from being convicted under both of the provisions. *See United States v. Miller*, 527 F.3d 54, 70–74 (3d Cir. 2008)(plain error to sentence on both possession and receipt of child pornography).

In *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the Court stated "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." "For the purpose of double jeopardy analysis, two offenses are the same if one is a lesser-included offense

of the other under the 'same-elements' (or *Blockburger*) test. This test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence'...." *United States v. Dixon*, 509 U.S. 688, 696 (opinion of the court) (internal quotation omitted). The Ninth Circuit, in *United States v. Kuchinski,* 469 F.3d 853, 859 (9th Cir.2006), in which the defendant was indicted both under § 2252A(a)(2) and under § 2252A(a)(5)(B), observed, in dicta, that "[i]f, as it seems, the counts were based on the same acts, entering judgment on both the offenses would be improper."

The "elements" to be compared are rather those that must necessarily be proved to establish the commission of a charged offense. *See United States v. Chorin*, 322 F.3d 274, 281 (3d Cir.2003) ("Under the *Blockburger* test, a court looks to the statutory elements of the crime charged to determine if there is any overlap.").

In relevant part, the jury instructions for Counts One and Three provided:

### Coercion and Enticement of a Minor to Engage in Sexual Activity
### 18 U.S.C. § 2422(b)

Counts One and Three allege Coercion and Enticement of a Minor to Engage in Sexual Activity.  Count One relates to CRP and Count Three relates to  AEP.

It is a Federal crime for anyone, using any facility or means of interstate or foreign commerce, including transmissions by computer on the Internet, to persuade, induce, entice, or coerce anyone under 18 years old to engage in any sexual activity for which any person could be charged with a criminal offense.

The Defendant can be found guilty of this crime only if  all the  following facts are proved beyond a reasonable doubt:

**(1) the Defendant knowingly persuaded, induced, enticed, or coerced CRP or AEP to engage in sexual activity, as charged**;

(2) the Defendant used a cellular telephone and/or the Internet to do so;

(3) when the Defendant did these acts, CRP or AEP was less than 18 years old; and

(4) one or more of the individual(s) engaging in the sexual activity could have been charged with a criminal offense under the laws of the State of Florida or the United States.

As used in this instruction, "induce" means to stimulate the occurrence of or to cause. "Persuade" means to induce or win over a person to an act or course of action; or to draw the will of another to something, by inclining his judgement or desire to it. "Entice" means to lure, induce, tempt, incite, or persuade a person to do a thing. Coerce" means compel to compliance.

A cellular telephone and the Internet are both facilities of interstate commerce.

The Government must prove that one or more of the individuals engaging in the sexual activity could have been charged with a criminal offense under the laws of the State of Florida or the United States.

As a matter of law, the following acts are crimes under Florida law: Lewd or Lascivious Sexual Battery in violation of Fla. Stat. § 800.04; Lewd or Lascivious Sexual Molestation in violation of Fla. Stat. § 800.04; and Sexual Performance by a Child in violation of Fla. Stat.§ 827.071. **As a matter of law, Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and (e) is a crime under the laws of the United States.** These crimes are explained below.

10

(Doc. 133: Pgs 10-11)(emphasis added).

The only explanation provided with respect to Production of Child Pornography for purposes of the enticements counts, One and Three, was the instruction as to what was required to convict for Counts Two and Five. This instruction read:

### Sexual Exploitation of Children-Producing Child Pornography
### 18 U.S.C. § 2251(a)

Counts Two and Five charge the Defendant with producing child pornography in violation of 18 U.S.C. § 2251(a). Count Two concerns CRP, and Count Four concerns AEP.

It is a Federal crime for any person to **employ, use, persuade, induce, entice, or coerce a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct** if the person knows or has reason to know that the visual depiction will be transported in interstate or foreign commerce or mailed, the visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or the visual depiction has been transported in interstate or foreign commerce, or mailed.

The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

 (1)   an actual minor, that is, a real person who was less than 18 years old, was depicted;

(2) the Defendant **employed, used, persuaded, induced, enticed, or coerced the minor    to engage in sexually explicit conduct for the purpose of producing a visual depiction,** for example, a video or  image, of the conduct; and

(3) either (a) the Defendant knew or had reason to know that the visual depiction would   be mailed or transported in interstate or foreign commerce; (b) the visual depiction was produced using materials that had been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer; or (c) the visual depiction was mailed or actually transported in interstate or foreign commerce.

(Doc. 133: Pgs 17-18)(Emphasis added).

The Court then defined the various terms. (Doc. 133: Pgs 18-19).

Here, the identical conduct underlying the production counts (Two and Five) also underlies the enticement counts (One and Four). To be convicted of the production counts, the government needed to prove that Mr. Sanchez employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of the conduct. The enticement counts could be proved by satisfying the same elements.

Mr. Sanchez maintains, therefore, that separate sentences may not be imposed for Counts One and Two. Similarly, separate sentences cannot be imposed on Counts Four and Five.

## C. EIGHTH AMENDMENT

The Eighth Amendment states: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." This provides a brake on any sentence, regardless of the statutory range. The Supreme Court has made clear "[t]he Eighth Amendment prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." *Solem v. Helm*, 463 U.S. 277, 284, 103 S. Ct. 3001, 3006 (1983). Mr. Sanchez maintains that a sentence of life, or effectively life,

imprisonment under the circumstances of this case would violate the Eighth Amendment.

## SENTENCING GUIDELINE RANGE

While the sentencing guideline range is but one factor which the Court is to consider at sentencing, it  must be correctly calculated. *See, United States v. Talley,* 431 F.3d 784, 787-88 (11th Cir. 2005). In this case, the PSR maintains that a number of enhancements increase Mr. Sanchez's advisory range to life imprisonment. The burden of proof for establishing that a sentence enhancement is warranted lies with the prosecution. *See United States v. Hernandez*, 145 F.3d 1433, 1440 (11th Cir. 1998). Mr. Sanchez maintains that the guideline calculation, based upon a total offense level of 38 and a criminal history category II, should be 262-327 months. As the minimum sentence is 300 months, the Court could not impose a sentence below the guideline range. Therefore the guideline range becomes 300-327 months. Mr. Sanchez objects to the following guideline increases.

A.  5 LEVEL ENHANCEMENT UNDER USSG §  4B1.5(B)(1)

The most significant change between the initial and final PSR is the addition of the five-level increase under § 4B1.5(b)(1). That section applies only the instant offense is a "covered sex offense"; and the defendant "engaged in a pattern of activity involving prohibited sexual conduct." The initial PSR concluded that USSG §4B1.5(a), as opposed to (b)  applied because the Probation Office at that time concluded Mr. Sanchez's prior military conviction was a "prior sex offense" conviction. The government now maintains that §4B1.5(a) does not apply because the military conviction is *not*  a prior sex offense.

While the guidelines are silent on the point, the commentary provides that a "pattern" means the defendant engaged in a pattern of prohibited sexual conduct on at least two occasions, and an occasion can occur during the course of the instant offense. USSG § 4B1.5 comment n. 4(B) (i) and (ii).

The Probation Office, and the government, maintain that the "pattern" here was entirely intrinsic to the charged offenses, arguing it is supported by the Mr. Sanchez's alleged sexual relation with CRP, production of child pornography relating to CRP, and production of child pornography with respect to AEP.

As discussed below, the government argued persuasively to the jury that it did not need to reach the issue of whether there was, in fact, and actual sexual relationship with CRP. And as Mr. Sanchez argued in support of his Rule 29 motion as to AEP, he did not make specific requests for child pornography from AEP but rather she determined what she would videotape.

B.  2 LEVEL INCREASES UNDER 2G2.1(B)(2)(A)

If the offense involves the commission of a sexual act or sexual contact, increase by two-levels. The Pre-sentence Report claims only that that the offenses in question involved "sexual acts." (PSR ¶¶ 51, 62).

The commentary indicates that "sexual act" has the meaning given that term in 18 U.S.C. § 2246(2). comment n.2.  "Sexual act" under 18 U.S.C. § 2246(2)(D) is defined, in pertinent part, as "the intentional touching, not through the clothing, of the genitalia *of another person* who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person."

14

(Emphasis added).  Under its plain language, to be a sexual act there must be a touching of "another person." Thus, for example, inducing another person to masturbate does not come within that definition.

   1. CRP

   As to CRP, paragraph 52 of the PSR alleges that "the videos contained on the cellular phone that were recorded/produced depicted CRP involved in numerous sexual acts. Consequently, two levels are applied." There was no claim that these videos depicted "another person" touching CRP or CRP touching "another person." Therefore, as alleged in the PSR, this enhancement does not apply.

   2. AEP

   As to AEP, paragraph 61 of the PSR alleges she "testified that at least one of the videos she recorded at the request of Sanchez depicted her masturbating by digitally penetrating her vagina, which is a covered sexual act as defined at 18 U.S.C. § 2246(2). Consequently, two levels are applied." Again, there is no claim that any of the AEP videos depicted either "another person" touching AEP touching "another person." Therefore, as alleged in the PSR, this enhancement does not apply.

C.  4 LEVEL INCREASE UNDER USSG §2G2.1(a)(4)(A).

   Mr. Sanchez further objects to the extension of USSG §2G2.1(a)(4)(A), and the resulting four-level increase, to the circumstances involving CRP. This increase applies only if the offense involved "material that portrays sadistic or masochistic conduct *or other depictions of violence.*" (Emphasis added). Unlike other guideline provisions, the commentary provides no guidance to this provision. "Other depictions of violence"

suggest that the conduct considered to be "sadistic or masochistic" should be akin to depictions of violence.

"[T]here are two ways to show that an image is sadistic: "(1) offer evidence that the image depicts the sexual penetration of a prepubescent child, in which case we presume that the image is 'inherently sadistic,' or  (2) offer evidence that the image depicts violence or the 'infliction of pain,' either mental or physical." *United States v. Cover*, 800 F.3d 275, 280 (6th Cir. 2015)(rejecting the contention that image of a 13 year old engaging in oral sex with a man was sadistic where there is no indication that she was either visibly pained or prepubescent). "This is because sexual penetration of a prepubescent child can be presumed 'inherently sadistic', largely because such conduct is likely to cause pain in one so young." *Id.* (citations omitted).

There is no question under Eleventh Circuit case-law that vaginal or anal penetration of a pre-pubescent minor by an adult male qualifies for the enhancement. *See e.g. United States v. Bender*, 290 F.3d 1279, 1285 (11th Cir. 2002). Such conduct is no doubt inherently sadistic.

According to the government, the conduct in question was the result of the following on-line banter:

Defendant: "Use your tooth brush and show me ducking yourself"

CRP: "It's probably gonna hurt a lot"

Defendant: "I like to see you in pain" "Send a videoc of you ducking ursled"

CRP: "Oh you like to see me in pain"

Defendant: "Yes" "Turns me on"

The PSR here maintains that the enhancement is justified because "CRP testified at trial that she created sexually explicit images or videos at the direction of Sanchez wherein she touched her vagina and penetrated her vagina using a toothbrush and curling iron, causing her pain. As noted at paragraph 19 of the presentence report, prior to making the video involving the toothbrush, CRP advised Sanchez that doing so would be painful. During her testimony, CRP testified that creating such images was painful. Consequently, it this enhancement is warranted." (PSR ¶ 54).

While CRP may have testified that her actions caused her "pain," this is simply not akin to sexual penetration of a pre-pubescent minor. It is also not akin to depictions of violence. Without falling into the trap of discussing degrees of pain, Mr. Sanchez simply maintains that CRP's response to this sexual banter goes beyond what §2G2.1(a)(4)(A) covers.

D. TWO-LEVEL INCREASE UNDER USSG §2G2.1(b)(3)

The government embarks on a novel suggestion that because Mr. Sanchez received child pornography, therefore, he distributed it. The government recognizes "[f]or an issue that would seem to reoccur frequently, there does not appear to be controlling Eleventh Circuit precedent, either way, on this question." (Doc. 155: Pg 7). While the government appears puzzled by this, the obvious reason is that the suggestion is so unusual.

The case cited by the government as the "closest," *United States v. Hernandez*, 894 F.3d 1104 (9th Cir. 2018) does not involve the same issue. As the government recognized the defendant in *Hernandez* sent photos of himself and the victim engaged in

sexual activity, but only to the alleged victim. (Doc 155: 8) (citing *Hernandez* at 1106). The Ninth Circuit simply rejected the defendant's claim that distribution only occurs when the images are shared with a third party. *Hernandez* may well be correct, but it is not the issue here.

The government cites the commentary to a separate section of the child pornography guidelines defines "distribution" as "any act . . . related to the transfer of material involving the sexual exploitation of a minor." However, the provision continues – "distribution includes posting material involving the sexual exploitation of a minor on a website for public viewing but does not include the *mere solicitation* of such material by the defendant." (Emphasis added). Although the allegation that Mr. Sanchez *solicited* the images from CRP and AEP is the government's precise argument as to why the enhancement applies (Doc. 155: Pgs 3-7), it goes on to allege that because Mr. Sanchez ultimately *received* the images he is deemed to have *distributed* the images. (Doc. 155: Pg 9)("Indeed, distribution is a necessary precondition to receipt.")("The defendant knew that, to receive child pornography from the victims, they would have to distribute it to him.").

None of the authority cited by the government stands for the position that a defendant can be held responsible for distribution for guidelines purposes where the only distribution is to himself. Under the government's theory, every case involving receipt of child pornography would also constitute distribution. Mr. Sanchez respectfully maintains that the Court should decline to extend the guidelines as suggested by the government.

## FACTORS RELEVANT TO AN APPROPRIATE SENTENCE UNDER 18 U.S.C. § 3553(A)

After calculating the sentencing guidelines, the Court must consider the factors in 18 U.S.C. § 3553(a). These factors include: the nature and circumstances of the offense and the history and characteristics of the defendant; the need to reflect the seriousness of the offense; to promote respect for law; to provide just punishment for the offense;  the need for deterrence; to protect the public; to provide the defendant with needed educational or vocational training or medical care; the kinds of sentences available; the Sentencing Guidelines range; pertinent policy statements of the Sentencing Commission; the need to avoid unwanted sentencing disparities; and the need to provide restitution to victims. "[S]entencing courts may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) (internal quotation omitted) 'The guiding principle in Section 3553(a) requires a district court to "assign a sentence 'sufficient, but not greater than necessary' to comply with the purposes of sentencing" set forth in Section 3553(a)(2).

Too frequently the parties are trapped in misleading language. While the case law uses the term "variance," this is a misnomer as it suggests that there must be *grounds* for a variance but no *grounds* for a guideline sentence.  The singular consideration that an arithmetic calculation of the guidelines results in a sentence more severe than the circumstances warrant is sufficient grounds to permit, and in fact mandate, a sentence below the guideline range. Here, Mr. Sanchez maintains that the guideline life sentence

19

calculated by the Probation Office, should the Court determine it to be correct, is substantially more severe than can be reasonably justified. As one court has observed: "[t]he ultimate question in terms of [punishment] is; When is enough enough?" *United States v. Grober,* 595 F. Supp. 2d 382, 383 (D.N.J. 2008), aff'd, 624 F.3d 592 (3d Cir. 2010).

**Application of the § 3553 factors to this case.**

Personal History and Characteristics

Mr. Sanchez is 32 years old. He was born in Middletown, New York. He has both full siblings and half-siblings from both parents. While his immediate family was close, he described his childhood as unstable given that the family moved a great deal as he was growing up. The family moved to Puerto Rico and the returned to Middletown when he was approximately eight years old. The family later lived in Miami, Clewiston, where he graduated from high school, and eventually Lee County. In high school, he played on the baseball and basketball teams and was a member of the chess, criminal justice, and science clubs.

Mr. Sanchez joined the United States Air Force in 2007 at 20 years old. He was assigned to Security Forces and obtained the rank of Senior Airman – Select. He served deployments in the United Arab Emirate, Germany, and Iraq. As reflected in the PSR, he received Outstanding Unit Award, Good Conduct Medal, National Defense Service Medal, Global War on Terrorism Expeditionary Medal, Global Warn on Terrorism Services Medal, Overseas Ribbon, Longevity of Service, Small Arms Marksmanship (Pistol) and Training Ribbon.

20

After the Air Force, Mr. Sanchez began a vending machine business which he operated for fifteen months until he secured employment with a graphic design company. He maintained this position for two years, then secured a position at an appliance store in Fort Myers, Florida. He later attended cosmetology school where he studied to become a nail technician. He subsequently worked at a restaurant for one year while also working at a nail salon. He eventually opened his own nail shop at a local mall before converting to a mobile nail business. He is divorced with a five-year old daughter.

Mr. Sanchez has been diagnosed with a bi-polar disorder. He also has a history of depression. In school he was placed in special classes due to learning disabilities.

While awaiting sentencing, Mr. Sanchez was brutally beaten by another inmate at the Glades County Jail. He was unresponsive when reached by jail staff and had to be airlifted to Lee Memorial Hospital with head injuries.

Despite the worst of circumstances, Mr. Sanchez has made the best of his time in the 27 months since he was incarcerated. He has participated in numerous self-improvement programs, particularly in religious studies.

THE CIRCUMSTANCES OF THE OFFENSE

Mr. Sanchez's position at trial was that the government failed to prove the actual sexual relationship with CRP. Although he did not deny the actual conduct with respect to the images of CRP and AEP, he did maintain that his conduct did not rise to the level of enticement.

Mr. Sanchez has submitted factual objections to various versions of the PSR in his letter responses of June 28 and September 4, 2019. The Probation Office in the July 10 report dismisses Mr. Sanchez's factual objections *en masse* by stating:

> The information contained in the Offense Conduct section was compiled from investigative reports, the discovery in this case, and evidence adduced at trial. These paragraphs are consistent with the information and evidence presented at trial and consistent with the jury verdict in this case. Pursuant to USSG §6A1.3, the Court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy. The probation office maintains the statements in the Offense Conduct are factually accurate.

It is an oversimplification to say that factual objections are merely a recitation of Mr. Sanchez's positions at trial. Some facts recited in the PSR are not consistent with the trial testimony or the jury verdict. For example, there were only perhaps three videos of CRP and one image of AEP that constituted child pornography.  In other instances, the PSR may cite facts that were testified to, but which were not necessarily found by the jury to be correct. In fact, in closing argument, the government persuasively argued to the jury that it need not believe there was an actual sexual relationship between Mr. Sanchez and CRP to convict him as charged. Indeed there was ample reason to doubt such a relationship existed beyond mere talk. CRP led investigators to believe that she had sexual encounters in Mr. Sanchez's car. When the DNA evidence from the vehicle excluded her, she changed her story to now maintain that the encounters took place on the vehicle. While the government is free to argue there was such a relationship, it cannot argue that these allegations were supported by the jury verdict.

DISPARITY IN SENTENCING

18 U.S.C. § 3553(a)(6) directs the Court to avoid unwarranted sentencing disparities. Cases of this nature are particularly ripe for such disparities.

Courts have imposed sentences significantly below that which Mr. Sanchez is potentially facing for comparable conduct. This is true even if the Court were adopt the most the government's factual positions in their entirety. *See e.g.*, *United States v. Rothenberg,* 610 F.3d 621 (11th Cir. 2010) (downward variance from a guideline range of 324-405 months to 300 months for a defendant charged with using a computer in interstate commerce, knowingly attempted to induce an individual under 18 to engage in criminal sexual activity in violation of 18 U.S.C. § 2422(b) and child pornography); *United States v. Kapordelis*, 569 F.3d 1291 (11th Cir. 2009) (35-year sentence for the defendant, who over a span of at least 20 years: drugged two boys, aged 11 and 14, on three occasions before photographing their genitalia; traveled abroad, where he molested and took digital videos and pictures of three minors, some of whom he had drugged, and engaged in oral and anal sex with at least one 17-year-old; solicited sex from male prostitutes under the age of 18 while in foreign countries; drugged his 16-year-old second cousin and then videotaped himself having sex with the minor; and possessed approximately 10,580 images and 400 videos of child pornography, some of which featured victims he had personally molested); *United States v. Hooper,* 338 F. App'x 866, 867 (11th Cir. 2009)(affirming a sentence of  190 months where the defendant, in his 20's, had a long-term sexual relationship with a fourteen year old, whom he impregnated, after sustaining a prior conviction for a forced  sexual battery on a 17–year old); *United States*

*v. Sanchez*, 440 F. App'x 436 (6th Cir. 2011)(360 month sentence where defendant used his 12 year old daughter, who he had been sexually abusing since she was in kindergarten, to produce child pornography, specifically a video of him forcing her to engage in sexual intercourse, and despite his two prior convictions for sexual abuse of minors); *United States v. Hilton,* 2014 WL 1624009, *1 (E.D. Mich. 2014)(varying from guideline range of life imprisonment to 40 years, citing, in part, the need to avoid unwarranted disparities in sentencing and in part concerns about elderly inmates); *United States v. Gann*, 160 F. App'x 466 (6th Cir.2005) (defendant sentenced to 17.5 years for producing and receiving child pornography, 18 U.S.C. §§ 2251(a), 2252A(a)(2)(A), using his daughters to produce pornography); *United States v. Bowers*, No. 07–20208 (E.D. Mich. Oct. 30, 2008) (defendant sentenced to 25 years after conviction by jury of sexual exploitation of a child in the manufacture of child pornography, 18 U.S.C. § 2251(a), and possession of child pornography, 18 U.S.C. § 2252(a)(4)(B), using his minor daughter and her friends to produce pornography).

Courts have, in fact imposed comparable, or even lesser, sentences for far more serious conduct.  *United States v. Irey*, 612 F.3d 1160 (11th Cir. 2010)(remanding case and stating that nothing less than a 30-year sentence is reasonable for a man who raped, sodomized, and tortured of over 50 children over several years and distributed child pornography on the internet); *United States v. Hodnett*, 210 F. App'x. 949 (11th Cir. 2006) (30-year sentence for the defendant, who fell within criminal history category I, who possessed at least 600 images of child pornography, some of which depicted prepubescent minors engaged in sexual activity, traded images of child pornography over

24

the internet, and had in the past, engaged in the following sexual activities with minors: kidnaping and raping a 6-year-old Vietnamese girl in 1969 while serving in Vietnam; molesting and engaging in sexual intercourse with his two step-daughters in the 1970s; and engaging in oral sex with a 6-year-old girl in 2004); *United States v. Prive*, 2015 WL 12966285 (M.D Fla. 2015) (365 month sentence where the defendant sexually abused a three year old at the invitation and with the assistance of the child's father, and attempted to do so on a later occasion).

It cannot go without mention that in a case where the defendant was a former United States Congressman, which involved conduct particularly similar to the AEP allegations, the court imposed a 21 month sentence. *See United States v. Anthony Weiner*, 17-cr. 307 (DLC)(S.D.N.Y September 21, 2017).

PROTECTION OF THE PUBLIC

Section 3553(a)(1)(C) directs the Court to consider the need to protect the public from further crimes of the defendant. It is anticipated that Dr. Eric Imhof, who evaluated Mr. Sanchez, will testify in greater detail at the sentencing hearing, Dr. Imhof indicates that Mr. Sanchez acknowledges difficulties in the management of his sexual behavior and currently presents as motivated for, and amenable to, treatment. Mr. Sanchez was apparently sent to a treatment program following his military conviction. However, it does not appear that the treatment was long enough or adequate.

In context, the issue is not whether Mr. Sanchez would pose a risk to re-offend at this point, but rather whether he would pose such a risk in the *very distant future*. Mr. Sanchez was arrested when he was 30 years old, and has been in continuous custody

thereafter. A twenty-five year sentence would result in his incarceration until well into his 50's. The 35 year sentence, which the government maintains is the minimum, would result imprisonment until his 60's. Imprisonment for this duration is more than sufficient to protect the public.

VULNERABILITY WHILE IN PRISON

A variance is further supported based upon Mr. Sanchez's vulnerability to violence while imprisoned. Mr. Sanchez's brutal beating at the hands of another inmate brings home that this is not merely a theoretical concern.

Courts have recognized that vulnerability is supports a below guideline sentence. *United States v. Slager,* 2018 WL 445497, *23-24 (D.S.C. 2018) (citing cases); *see United States v. Parish,* 308 F.2d 1025, 1032 (9th Cir. 2002) (pre-Booker, child pornography case). *United States v. Graham,* 83 F.3d 1466, 1480-81 (D.C. Cir. 1996) (pre-Booker, court may depart downward on basis of extreme vulnerability to abuse in prison). See also *United States v. Rausch*, 570 F.Supp.2d 1295, 1308 n.8 (D.Colo. 2008) (notwithstanding BOP statements to the contrary, downward variance granted in part on "the legion of published studies on prison conditions establish clearly that violence against inmates, especially sex offenders, does occur and that vulnerable victims are at a greater risk of violence than typical inmate populations"); *United States v. Ruff*, 998 F. Supp. 1351, 1355-56, 1359, 1362-63 (M.D. Ala. 1998) (pre-Booker, granting downward departure for vulnerability to victimization and noting defendant has been previously assaulted while incarcerated).

That Mr. Sanchez suffers from bi-polar disorder only makes future assaults while incarcerated more likely.  E. Lea Johnston, *Vulnerablity and Just Desert: A Theory of Sentencing and Mental Illness,* 103 J. Crim. & Criminology 147, 166 (Winter 2013); see *United States v. Boutot*, 480 F.Supp.2d 413, 419, 421 (D. Me. 2007) (*Koon* departure on basis that schizophrenic defendant's anticipated decompensation while imprisoned and if not properly medicated).

**CONCLUSION**

Even were the Court were to view the evidence in the light most favorable to the government, the circumstances do not mandate a life (or effectively a life) sentence. First, the case did not involve prepubescent minors, but rather teenagers. The "production," as alleged, was not for wider distribution. Without minimizing the age considerations, the conduct alleged was otherwise consensual. Additionally, the proposed guideline range results more from the Probation Office's view as to the technical application of the guidelines as opposed to enhancements that reasonably measure the severity of the offense.

Mr. Sanchez maintains that the extraordinarily lengthy sentence required by the statutory minimum is sufficient under the circumstances. Such a sentence will satisfy all of the reasonable sentencing considerations set forth in 18 U.S.C.§ 3553.

Respectfully submitted,

DONNA LEE ELM
Federal Defender

27

/s/ Russell K. Rosenthal
Russell K. Rosenthal
Florida Bar No. 0319244
Assistant Federal Defender
1514 Broadway Suite 301
 Fort Myers Florida 33901
Telephone: 239 334-0397
Facsimile: 239 334-4109

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 13th day of September, 2019, a true and correct copy of the foregoing has been filed in this court and a copy was forwarded by electronic mail to Charles D. Schmitz, Assistant United States Attorney, 2110 First Street, 3-137, Fort Myers, Florida 33901.

s/RussellK.Rosenthal
Russell K. Rosenthal